<table>
<tr><td>

**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**

100 Jefferson County Parkway<br>Golden, CO 80401<br>Phone: 720-772-2500

</td><td rowspan="3">

DATE FILED<br>May 15, 2026 4:14 PM<br>FILING ID: FB1D33E64E1C4<br>CASE NUMBER: 2026CV30859

**▲ COURT USE ONLY ▲**

Case Number:

Division:

Courtroom:

</td></tr>
<tr><td>

**TRIMBLE INC., a Delaware corporation; and GRÈGORY LEPÈRE, and individual**

Plaintiffs,

v.

**FARO TECHNOLOGIES, INC., a Florida corporation,**

Defendant.

</td></tr>
<tr><td>

*Attorneys for Plaintiff Trimble Inc.:*

Susan S. Sperber, #22081<br>Sara E. Yates #56539<br>WOMBLE BOND DICKINSON (US) LLP<br>1601 19th Street, Suite 1000<br>Denver, CO 80202<br>Tel.: 303.623.9000<br>Fax: 303.623.9222<br>Email: Susan.Sperber@wbd-us.com<br>Sara.Yates@wbd-us.com

*Attorney for Plaintiff Grègory Lepère:*

Sean Baker, #25949<br>CRUX LEGAL LLC<br>1823 Ford St., Suite 101<br>Golden, CO 80401<br>Tel.: 720-508-8713<br>Email: baker@cruxlegal.com

</td></tr>
<tr><td colspan="2">

**COMPLAINT**

</td></tr>
</table>

Plaintiffs Trimble Inc. (“Trimble”) and Grègory Lepère (“Mr. Lepère) (collectively, “Plaintiffs”), by and through their undersigned counsel, Womble Bond Dickinson (US) LLP and

Crux Legal LLC, respectfully submit their Complaint against Defendant FARO Technologies, Inc. ("FARO" or "Defendant"), and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Trimble is a Delaware corporation that maintains its principal place of business at 10368 Westmoor Drive, Westminster, Colorado 80021.

2. Plaintiff Gregory Lepère is a natural person and resident of the State of Colorado, residing in Superior, Colorado. Mr. Lepère is a "worker" within the meaning of C.R.S. § 8-2-113.

3. Defendant FARO is a Florida corporation. Upon information and belief, FARO maintains its principal place of business at 1100 Cassatt Road, Berwyn, Pennsylvania 19312. FARO is registered to do business in the State of Colorado as a foreign corporation in good standing.

4. Jurisdiction is proper in this Court pursuant to C.R.S. § 13-1-124(1)(a), (b), and (c) because Defendant FARO transacts business within the State of Colorado, maintains minimum contacts sufficient to confer personal jurisdiction, and committed tortious acts and statutory violations directed into Colorado that give rise to Plaintiffs' claims.

5. This Court has subject-matter jurisdiction over this action pursuant to C.R.S. §§ 13-1-124 and 13-1-125, and Article VI, Section 9 of the Colorado Constitution, because Plaintiffs seek declaratory, injunctive, and monetary relief arising under Colorado statutory law and Colorado common law.

6. Personal jurisdiction over FARO is proper because FARO is registered to do business as a foreign corporation in Colorado, knowingly employed a Colorado-based worker, and expressly directed the conduct forming the basis of this action into Colorado, including sending enforcement threats and demands to a Colorado resident and a Colorado-based employer.

7. Venue is proper in Jefferson County, Colorado pursuant to C.R.S. § 13-1-124(1) and C.R.S. § 13-1-124(2) because:

a. Plaintiff Trimble Inc. maintains its principal place of business in Jefferson County, Colorado;

b. Plaintiff Gregory Lepère resides and works in Colorado and has been harmed by Defendant's conduct within the State of Colorado;

c. A substantial part of the events and omissions giving rise to the claims asserted occurred in Jefferson County and the State of Colorado; and

d. Defendant's alleged tortious conduct and statutory violations were expressly directed into Colorado and caused injury in Jefferson County.

## GENERAL ALLEGATIONS

8. Trimble is a global technology company providing solutions in positioning, modeling, connectivity, and data analytics. Trimble's Field Systems business segment, which is based in Colorado, offers a range of advanced surveying, construction, positioning, mapping, and 3D imaging solutions.

9. FARO is a technology company that designs, develops, manufactures, markets, and supports 3D measurement, imaging, and realization technology solutions, including laser scanners and other optical measurement devices.

10. Mr. Lepère is a resident of Superior, Colorado. He was a Colorado resident throughout his employment with FARO and remains a Colorado resident today.

### A. Mr. Lepère's Employment History with Trimble and FARO

11. Mr. Lepère was originally employed by Trimble for approximately 18 years, from approximately 2003 to October 2021.

12. Through his original tenure with Trimble, Mr. Lepère worked in various product marketing and technology roles focused on 3D scanning and imaging solutions, developing deep knowledge of geospatial workflows, surveying and mapping markets, optical and imaging technologies, product development and commercialization, and competitive positioning, as well as Trimble's products, systems, go-to-market strategy, and pricing.

13. In October 2021, FARO actively recruited and hired Mr. Lepère away from Trimble. Mr. Lepère joined FARO in a product marketing role that was substantially similar to the role that Mr. Lepère held with Trimble. FARO hired Mr. Lepère in whole or in part due his existing experience, credibility, knowledge, and expertise developed through his long tenure working for Trimble.

14. Mr. Lepère was based in Colorado at the time he was hired by FARO, and remained a resident of Colorado throughout his employment with FARO.

### B. The Intellectual Property and Non-Competition Agreements

15. As a condition of his employment with FARO, Mr. Lepère signed an Intellectual Property and Confidentiality Agreement (the "IP Agreement") dated October 28, 2021. A true and correct copy of the IP Agreement is attached hereto as **Exhibit A**.

16. Mr. Lepère also signed a Non-Competition and Non-Solicitation Addendum (the "Noncompete Agreement") attached to and incorporated into the IP Agreement. *See id.* § 5. A true and correct copy of the Noncompete Agreement is attached hereto as **Exhibit B**.

17. Section B of the Noncompete Agreement defines "FARO Competitor" to mean "any business or enterprise that provides goods and/or services similar to or competitive with FARO," "including, without limitation, those persons or entities identified on Schedule 1 as current competitors of FARO as of the date hereof" or any of such Competitor's "subsidiaries, affiliates, agents or distributors, irrespective of whether the subsidiary, affiliate, agent or distributor itself provides goods and/or services similar to or competitive with FARO." *See id.* § B.

18. Schedule 1 to the Noncompete Agreement lists "Current Competitors" of FARO. Trimble is expressly identified on Schedule 1 as a FARO Competitor. *See id*. at 4, Schedule 1.

19. Section B of the Noncompete Agreement defines "Restricted Period" as "the term of Employee's employment with FARO and for a period of twenty-four months after the date Employee's employment with FARO is terminated for any reason." *See id.*

20. Section C of the Noncompete Agreement contains a non-competition provision which purports to prohibit the Employee from directly or indirectly assisting, being employed by, consulting with, or providing services to any FARO Competitor during the Restricted Period "anywhere within the geographic boundaries of the continental United States." *See id.* § C. Nowhere in Section C is there any requirement that the work being performed by a FARO Competitor be similar to the work performed at FARO.

## C. <u>Mr. Lepère's Acceptance of his Current Role at Trimble</u>

21. Mr. Lepère continued in product marketing at FARO until his departure in September 2025. His work at FARO was product-focused, centering on the development of go-to-market strategies for 3D metrology and reality capture solutions and included many of the same responsibilities as he performed at Trimble as well as overlapping with his Trimble experience. Specifically, his role involved customer insight discovery, product definition, product positioning and messaging, product launches, sales enablement, market and competitive analysis, pricing, go-to-market strategy, portfolio roadmapping and prioritization, forecasting, and partnership identification and management.

22. Mr. Lepère resigned from FARO in September 2025 following FARO's acquisition by AMETEK, which resulted in significant organizational instability, including the departure of the majority of FARO's executive leadership team. After the acquisition, FARO was unwilling to provide Mr. Lepère with clarity or commitment regarding his continued role and sought to have him execute new restrictive agreements without disclosing the terms of his position. When FARO ultimately did present a proposed role, it represented a materially diminished position compared to his prior role, offering no meaningful opportunity for professional growth. Under these circumstances, Mr. Lepère concluded that there was no viable long-term opportunity at FARO and elected to resign.

23. Upon his resignation, Mr. Lepère returned all FARO company property, devices, and information belonging to FARO. Mr. Lepère brought no FARO confidential information or trade secrets to Trimble, nor has he used any such confidential information or trade secrets in the performance of his Trimble duties and responsibilities.

24. During Trimble's onboarding process, Mr. Lepère provided Trimble with written assurances that he would not disclose to or use in his work for Trimble any confidential information and/or trade secrets belonging to others, expressly including his prior employers.

25. Mr. Lepère's current position at Trimble as Vice President for Strategic Initiatives, is an internally focused role focused on strategic resource and capital allocation, execution discipline, organizational alignment, strategic coordination, and specific Trimble initiatives with Trimble's Field Systems business segment. His day-to-day activities include helping leadership identify resource gaps, trade-offs, conflicts, and strategic misalignment; running a quarterly resource allocation review process to ensure alignment of resource allocation with Trimble's strategic intent; supporting cross-functional alignment on strategic initiatives; and helping address organizational friction and execution gaps.

26. Mr. Lepère does not act as a product manager, does not define product roadmaps, and has absolutely no involvement in product pricing or discount approvals. He works as an individual contributor and does not currently have direct reports. His current role does not involve product or portfolio activities such as design, development, marketing, or pricing. Instead, it focuses on organizational alignment, execution support, and growth enablement.

27. Mr. Lepère's current role at Trimble fundamentally differs from his former position at FARO and does not include functions that involve any FARO-related products, technologies, or competitive information.

## D. <u>FARO's Interference in Trimble's Business and Demand for Mr. Lepère's Termination</u>

28. Approximately seven (7) months after he resigned his employment with FARO, on May 1, 2026, FARO, through its counsel at Dentons Cohen & Grigsby P.C., sent a letter (the "Demand") to Trimble's SVP and Chief Legal Officer, Jennifer Allison, and to Mr. Lepère at his Colorado residence, asserting that Mr. Lepère was violating his post-employment contractual obligations to FARO by working for Trimble. A true and correct copy of the Demand is attached hereto as **Exhibit C**.

29. In the Demand, FARO also claimed that Mr. Lepère's role at Trimble would cause Mr. Lepère to "inevitably" disclose FARO's trade secrets, despite the fact that Mr. Lepère had already worked for Trimble for almost six (6) months, and despite the fact that FARO's conduct in hiring Mr. Lepère away from Trimble in 2021 would have arguably have had the same result, if such an allegation was true.

30. In its May 1, 2026 letter, FARO made the following demands: (a) that Mr. Lepère resign from his employment with Trimble or that Trimble terminate Mr. Lepère's employment, effective immediately; (b) that Mr. Lepère cease any and all conduct that violates his contractual obligations to FARO; (c) that neither Trimble nor Mr. Lepère have in their possession any of FARO's Confidential Information or Trade Secrets; and (d) an accounting of all Confidential Information or Trade Secrets that Mr. Lepère has used or disclosed to or for the benefit of Trimble. *See generally id.*

31. FARO's letter threatened that "FARO is entitled to injunctive relief (among other remedies) against a former employee and his new employer" and warned that "Trimble's active involvement in Mr. Lepere's conduct and its continued employment of Mr. Lepere in breach of his non-compete and confidentiality obligations subjects it to liability for tortious interference with the Company's contractual relationships, among other legal claims." *See id.* at 4.

32. FARO's letter further asserted that Mr. Lepère's "position with Trimble constitutes a material breach of his non-competition obligations to FARO" and stated that "FARO is fully prepared to take whatever legal action may be necessary to protect its legitimate business and legal interests in this case." *See id.* at 3.

33. FARO's demands and threats constitute an attempt to enforce a void non-compete agreement in violation of C.R.S. § 8-2-113(8)(a), which provides that "[a]n employer shall not enter into, present to a worker or prospective worker as a term of employment, or attempt to enforce any covenant that is void under this section."

34. FARO's threats were calculated to intimidate Trimble into terminating Mr. Lepère and to intimidate Mr. Lepère into relinquishing his lawful employment, constituting the use of "force, threats, or other means of intimidation to prevent any person from engaging in any lawful occupation at any place the person sees fit" in violation of C.R.S. § 8-2-113(1.5)(a).

35. FARO's conduct in directing threats simultaneously to Mr. Lepère's residence and to Trimble's Chief Legal Officer was specifically designed to coerce Trimble into severing its employment relationship with Mr. Lepère and to deprive Mr. Lepère of his livelihood in his chosen profession.

36. FARO's assertion that Trimble is subject to liability for "tortious interference with the Company's contractual relationships" was made for the purpose of applying economic pressure on Trimble and chilling Trimble's willingness to continue employing Mr. Lepère, notwithstanding that the underlying covenant is void and unenforceable under Colorado law.

37. FARO clearly believed in 2021 that Mr. Lepère was fully capable of performing a substantially similar function for FARO despite his 18 years with Trimble without using Trimble confidential information and trade secrets or violating any alleged continuing obligations to Trimble.



EXHIBIT 1

38. FARO cannot now credibly argue that Mr. Lepère is incapable of performing a fundamentally different function at Trimble—one that is internally focused and does not involve any product development, marketing, or competitive activities—without disclosing FARO's confidential information.

## E. FARO's Interference Has Caused Ongoing Harm to Plaintiffs

39. FARO's demands have created uncertainty regarding the continuity of Mr. Lepère's employment with Trimble, disrupting Trimble's ability to plan and execute strategic initiatives dependent on Mr. Lepère's involvement.

40. Trimble has been forced to incur legal fees and costs in responding to FARO's baseless threats and in filing this action to protect its rights and the rights of its employee.

41. FARO's threats have caused and will continue to cause disruption to Trimble's business operations, uncertainty in its workforce planning, and damage to its employment relationship with Mr. Lepère.

42. FARO's threats have had a chilling effect on Trimble's ability to recruit, retain, and manage its workforce free from improper interference by competitors wielding void and unenforceable restrictive covenants.

43. FARO's conduct has caused and continues to cause concrete and ongoing harm to Mr. Lepère personally and professionally.

44. FARO directly threatened Mr. Lepère at his Colorado residence with litigation, injunctive relief, and the loss of his employment, placing his livelihood and primary source of income at immediate risk.

45. As a result of FARO's threats, Mr. Lepère has been forced to incur attorneys' fees and costs to protect his right to engage in lawful employment and to defend against FARO's attempt to enforce a void and unenforceable non-competition agreement.

46. FARO's conduct has subjected Mr. Lepère to significant professional uncertainty, placing him in the untenable position of facing legal threats for merely continuing lawful employment in a role that does not compete with FARO and does not involve FARO's products, pricing, or confidential information.

47. FARO's threats have impaired Mr. Lepère's ability to perform his job free from coercion and intimidation, have caused disruption to his professional responsibilities, and have interfered with his ability to plan his career and financial future.

48. Absent judicial intervention, Mr. Lepère faces the ongoing threat of enforcement actions intended to prevent him from engaging in his lawful occupation in Colorado, in direct contravention of Colorado public policy and C.R.S. § 8-2-113.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment Under C.R.S. § 8-2-113(7))**

49. Plaintiffs re-allege the allegations of the preceding paragraphs as if fully set forth herein.

50. An actual controversy exists between Plaintiffs and FARO regarding the enforceability of the non-competition and non-solicitation covenants in the Agreement, as applied to Mr. Lepère and his employment with Trimble.

51. Colorado has the most substantial interest in this litigation because it concerns the enforceability of a restrictive covenant affecting a Colorado-based worker and employer, alleged interference with a Colorado employment relationship, and the right of a Colorado resident to engage in lawful work within the state.

52. Mr. Lepère lived and worked in Colorado at all relevant times, performs his current employment in Colorado, Trimble's principal place of business is in Colorado, and FARO expressly directed its alleged conduct into Colorado, implicating Colorado's strong public policy governing employee mobility and restrictive covenants.

53. Pursuant to C.R.S. § 8-2-113(7), "[a] worker who is a party to a covenant not to compete, or a subsequent employer that has hired or is considering hiring the worker, may seek a declaratory judgment from a court of competent jurisdiction or an arbitrator that the covenant not to compete is unenforceable." Trimble is a "subsequent employer that has hired" Mr. Lepère; and Mr. Lepère is a "worker who is a party to a covenant not to compete"; accordingly, each is entitled to seek declaratory relief under this provision.

54. The non-competition covenant in Section C of the Noncompete Agreement is void and unenforceable under Colorado law for the following reasons, among others:

a. Under C.R.S. § 8-2-113(2)(a), any covenant not to compete that restricts the right of any person to receive compensation for performance of labor for any employer is void unless it falls within one of the narrow statutory exceptions. The Noncompete Agreement does not satisfy the requirements for any applicable exception.

b. The non-competition covenant is unreasonable in geographic scope, purporting to restrict Mr. Lepère's activities "anywhere within the geographic boundaries of the continental United States," which is far broader than necessary to protect any legitimate business interest.

c. The non-competition covenant is unreasonable in its breadth, purporting to prohibit Mr. Lepère from any employment with any "FARO Competitor" without regard to the nature of the position or whether it implicates any trade secrets or confidential information.

d. The non-competition covenant does not meet the requirements of C.R.S. § 8-2-113(2)(b) or (3) because it is not narrowly tailored to protect trade secrets and is far broader than reasonably necessary to protect FARO's legitimate interest in protecting trade secrets.

e. FARO's generalized desire to block Mr. Lepère from working for a competitor does not constitute a protectable legitimate business interest.

f. The Noncompete Agreement is unreasonable and overbroad in its scope, because it imposes restrictions that are disproportionate to any legitimate business interest, particularly where Mr. Lepère's role at Trimble does not involve competitive activities or FARO products.

55. FARO has violated C.R.S. § 8-2-113(8)(a) by attempting to enforce a void and unenforceable non-compete agreement against Mr. Lepère and by demanding that Trimble terminate Mr. Lepère's employment on the basis of that void agreement.

56. Plaintiffs are entitled to a declaratory judgment from this Court that:

a. The non-competition covenant in Section C of the Addendum is void and unenforceable under Colorado law;

b. Trimble's employment of Mr. Lepère does not violate any enforceable legal obligation;

c. FARO has violated C.R.S. § 8-2-113(8)(a) by attempting to enforce a void covenant not to compete; and

d. FARO has violated C.R.S. § 8-2-113(1.5)(a) by using force, threats, or other means of intimidation to prevent Mr. Lepère from engaging in a lawful occupation.

**<u>SECOND CLAIM FOR RELIEF</u>**
**(Declaratory Judgment Under Colorado Uniform Declaratory Judgments Law, C.R.S. § 13-51-101 *et seq.*– In the Alternative)**

57. Plaintiffs re-allege the allegations of the preceding paragraphs as if fully set forth herein.

58. This action presents an actual and justiciable controversy between Plaintiffs and FARO within the meaning of the Colorado Uniform Declaratory Judgments Law, C.R.S. § 13-51-101 *et seq.*

59. A real, concrete, and immediate dispute exists regarding FARO's asserted rights under the Non-Competition and Non-Solicitation Addendum and Plaintiffs' rights to continue

Mr. Lepère's lawful employment with Trimble free from threats of enforcement, litigation, or other coercive action.

60. FARO has affirmatively asserted that Mr. Lepère's current employment with Trimble violates his post-employment obligations, has demanded that Mr. Lepère resign or be terminated, and has threatened litigation and injunctive relief against both Mr. Lepère and Trimble if those demands are not met.

61. FARO has further asserted that Trimble faces liability for tortious interference arising from its continued employment of Mr. Lepère, thereby placing Plaintiffs in immediate peril of legal action and ongoing uncertainty regarding their legal rights and obligations.

62. These threats are not hypothetical or speculative. FARO's May 1, 2026 demand letter demonstrates FARO's willingness and intent to pursue enforcement and litigation unless Plaintiffs accede to its demands, creating a present controversy of sufficient immediacy and reality to warrant declaratory relief under Colorado law.

63. Absent a declaratory judgment from this Court, Plaintiffs will remain subject to continuing uncertainty, coercive pressure, and the risk of disruptive and duplicative litigation concerning the enforceability of the purported restrictive covenants and the legality of Mr. Lepère's employment.

64. A declaratory judgment will serve a useful and practical purpose in clarifying and settling the legal relations at issue between the parties, including whether FARO has any enforceable right to restrict Mr. Lepère's employment with Trimble and whether Trimble may lawfully continue to employ him without exposure to liability.

65. Declaratory relief will also terminate the uncertainty and controversy giving rise to this proceeding and prevent FARO from continuing to use the threat of enforcement as leverage to interfere with Plaintiffs' lawful activities.

66. Accordingly, pursuant to C.R.S. §§ 13-51-101 to 13-51-113, Plaintiffs seek a declaration that:

a. The non-competition covenant and related restrictive provisions asserted by FARO are unenforceable as applied to Mr. Lepère's employment with Trimble;

b. The non-competition covenant is unreasonable in geographic scope, purporting to restrict Mr. Lepère's activities "anywhere within the geographic boundaries of the continental United States," which is far broader than necessary to protect any legitimate business interest.

c. The non-competition covenant is unreasonable in its breadth, purporting to prohibit Mr. Lepère from any employment with any "FARO Competitor" without

regard to the nature of the position or whether it implicates any trade secrets or confidential information.

d. The Noncompete Agreement is unreasonable and overbroad in its scope, because it imposes restrictions that are disproportionate to any legitimate business interest, particularly where Mr. Lepère's role at Trimble does not involve competitive activities or FARO products.

e. Mr. Lepère's current employment with Trimble does not violate any enforceable contractual or legal obligation owed to FARO; and

f. Trimble's continued employment of Mr. Lepère does not subject it to liability to FARO.

67. Plaintiffs further seek such other declaratory and related relief as the Court deems just and proper to conclusively resolve the parties' dispute.

**THIRD CLAIM FOR RELIEF**
**(Violation of C.R.S. § 8-2-113(1.5)(a) — Use of Force, Threats, or Intimidation to Prevent Lawful Occupation)**

68. Plaintiffs re-allege the allegations of the preceding paragraphs as if fully set forth herein.

69. Pursuant to C.R.S. § 8-2-113(1.5)(a), "[i]t is unlawful to use force, threats, or other means of intimidation to prevent any person from engaging in any lawful occupation at any place the person sees fit."

70. Mr. Lepère's employment with Trimble as Vice President for Strategic Initiatives is a lawful occupation.

71. Trimble is the place where Mr. Lepère sees fit to exercise his skills and engage in his work, and FARO's threats were directed to both Mr. Lepère and Trimble to coerce the termination of that lawful occupation

72. FARO has used threats and intimidation to prevent Mr. Lepère from engaging in his lawful occupation at Trimble, including but not limited to:

a. Demanding that Mr. Lepère resign from his employment with Trimble, effective immediately;

b. Demanding that Trimble terminate Mr. Lepère's employment, effective immediately;

c. Threatening litigation and injunctive relief against both Mr. Lepère and Trimble;

d. Threatening that Trimble is subject to liability for tortious interference;

e. Asserting that a void and unenforceable non-competition covenant is "in full force and effect" and enforceable against Mr. Lepère in an attempt to terminate his lawful employment at Trimble; and

f. Directing threats simultaneously to both Mr. Lepère at his Colorado residence and to Trimble's Chief Legal Officer, with the intent to create coordinated pressure from multiple directions to coerce the termination of Mr. Lepère's employment at Trimble.

73. FARO's use of threats and intimidation to prevent Mr. Lepère from engaging in his lawful occupation at Trimble violates C.R.S. § 8-2-113(1.5)(a).

74. Plaintiffs are entitled to declaratory and injunctive relief, and to recover such other relief as the Court deems just and proper.

75. Separately, Mr. Lepère is also entitled to, and seeks, statutory penalties and fee recovery under C.R.S. § 8-2-113(8).

**FOURTH CLAIM FOR RELIEF[1]**
**(Violation of C.R.S. § 8-2-113(8)(a) and (b) — Attempt to Enforce Void Covenant)**

76. Plaintiff Gregory Lepère re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

77. Under C.R.S. § 8-2-113(8)(a), an employer shall not enter into, present to a worker or prospective worker as a term of employment, or attempt to enforce any covenant that is void under C.R.S. § 8-2-113.

78. FARO attempted to enforce a covenant not to compete that is void under C.R.S. § 8-2-113 by sending the May 1, 2026 Demand, asserting the covenant was enforceable, threatening litigation and injunctive relief, and demanding that Mr. Lepère resign or that Trimble terminate his employment.

79. Mr. Lepère was harmed by FARO's conduct, including by being subjected to threats intended to deprive him of his lawful employment and by incurring costs and attorneys' fees to protect his rights.

80. Pursuant to C.R.S. § 8-2-113(8)(b), FARO is liable to Mr. Lepère for actual damages and a penalty of $5,000, as well as reasonable costs and attorneys' fees, and Mr. Lepère is further entitled to injunctive relief.

---

[1] The Fourth Claim for Relief is brought only by Plaintiff Lepère, not by Plaintiff Trimble.

**FIFTH CLAIM FOR RELIEF**
**(Tortious Interference with Contract)**

81. Plaintiffs re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

82. At all times relevant hereto, Trimble and Mr. Lepère have been parties to a valid and enforceable employment contract, pursuant to which Mr. Lepère serves in a strategic initiatives role in Trimble's Field Systems business segment.

83. FARO had knowledge of the contractual employment relationship between Trimble and Mr. Lepère. Indeed, FARO's May 1, 2026 letter expressly acknowledges that "Mr. Lepere has accepted an employment position with Trimble" and that FARO is aware of Mr. Lepère's title and responsibilities at Trimble.

84. FARO intentionally and improperly interfered with the contractual employment relationship between Trimble and Mr. Lepère by:

a. Demanding that Mr. Lepère resign from his employment with Trimble, effective immediately;

b. Demanding that Trimble terminate Mr. Lepère's employment, effective immediately;

c. Threatening litigation and injunctive relief against both Mr. Lepère and Trimble;

d. Threatening that Trimble is subject to liability for tortious interference;

e. Attempting to enforce a void and unenforceable non-competition covenant for the purpose of coercing Trimble into terminating Mr. Lepère's employment; and

f. Asserting that Trimble "knowingly" hired Mr. Lepère in violation of his obligations and "deliberately placed him in a position where he has and will misappropriate FARO's Confidential Information and Trade Secrets," claims that are baseless and designed to coerce Trimble into severing its relationship with Mr. Lepère.

85. FARO's interference is improper because:

a. FARO seeks to enforce a non-competition covenant that is void and unenforceable under Colorado law;

b. FARO's actions constitute the use of "force, threats, or other means of intimidation to prevent [a] person from engaging in [a] lawful occupation," in violation of C.R.S. § 8-2-113(1.5)(a);

c. FARO's actions are motivated by an improper desire to prevent lawful competition, not by the protection of any legitimate business interest; and

d. FARO's conduct is designed to cause economic harm to Trimble by depriving it of the services of a key employee and executive.

86. FARO's allegations that Mr. Lepère has misappropriated FARO's trade secrets or confidential information are demonstrably false and were made without a good-faith basis.

87. FARO's claim that Trimble "knowingly" hired Mr. Lepère in violation of his obligations and "deliberately placed him in a position where he has and will misappropriate FARO's Confidential Information and Trade Secrets" is baseless and defamatory.

88. As a direct and proximate result of FARO's tortious interference, Trimble has suffered and continues to suffer damages, including but not limited to attorneys' fees and costs incurred in responding to FARO's threats, disruption to its business operations, and harm to its employment relationship with Mr. Lepère.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Trimble Inc. and Grègory Lepère respectfully request that the Court enter judgment against Defendant FARO Technologies, Inc. as follows:

1. Declaring that the non-competition covenant in Section C of the Non-Competition and Non-Solicitation Addendum to the Intellectual Property and Confidentiality Agreement is void and unenforceable;

2. Declaring that FARO has violated C.R.S. § 8-2-113(8)(a) by attempting to enforce a void covenant not to compete;

3. Declaring that Trimble's employment of Mr. Lepère does not violate any enforceable legal obligation owed to FARO;

4. Awarding Mr. Lepère his actual damages, reasonable costs, and attorneys' fees pursuant to Colo. Rev. Stat. § 8-2-113(8)(b);

5. Awarding Mr. Lepère statutory penalties of $5,000 per worker harmed pursuant to Colo. Rev. Stat. § 8-2-113(8)(b);

6. Awarding Plaintiffs compensatory damages for FARO's tortious interference with contract in an amount to be determined at trial;

7. Awarding Plaintiffs injunctive relief prohibiting FARO from interfering with Mr. Lepère's employment at Trimble and from attempting to enforce the void non-competition and non-solicitation covenants;

8. Awarding Plaintiffs pre- and post-judgment interest as permitted by law;

9. Awarding Plaintiffs their costs and disbursements of this action; and

10. Granting Plaintiffs such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs Trimble Inc. and Grègory Lepère hereby demand a trial by jury on all issues so triable.

DATED: May 8, 2026.

WOMBLE BOND DICKINSON (US) LLP

*s/ Susan S. Sperber*
Susan S. Sperber, Esq.
Sara E. Yates, Esq.

*Attorneys for Plaintiff Trimble Inc.*

And

CRUX LEGAL LLC

*s/ Sean Baker*
Sean Baker, Esq.

*Attorney for Plaintiff Grègory Lepère*

Address of Plaintiff Trimble:
10368 Westmoor Drive
Westminster, CO 80021

Address of Plaintiff Lepère:
935 Cobalt Way
Superior, CO 80027

# Exhibit A

# INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT

This **INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT** (the "Agreement"), effective as of ________, 201_, is made by and between FARO Technologies, Inc., a Florida Corporation, including its subsidiaries and affiliates (hereinafter collectively "FARO" or "Employer"), and ______________________________ ("Employee").

In consideration of the Employee's employment by FARO, the compensation paid and to be paid to Employee by FARO, and Employer's agreement to provide Employee access to Employer's Confidential Information (as defined below) and Trade Secrets (as defined below and as defined under Florida law) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee hereby warrants and agrees to be legally bound as follows:

1. **Definitions**

a. "Business" means (1) all aspects related to 3-D measurement, imaging or realization systems, including but not limited to the design, development, manufacture, marketing, sale, offer for sale and support of such 3-D measurement, imaging or realization systems, and (2) any other technology, product, process, apparatus, service, research or development on which Employee worked or had access to Confidential Information while employed by FARO.

b. "Confidential Information" shall mean information, other than Trade Secrets, which relates to Employer, Employer's activities, Employer's business or Employer's suppliers or customers that is not generally known by persons not employed by Employer, and which is or has been disclosed to Employee or of which Employee became aware as a consequence of or through his or her relationship to Employer. This includes but is not limited to FARO's know-how; accounts; pricing and cost information; marketing techniques and plans; computer programs and software; coding systems and processes; computer networking concepts and processes; source code; contract terms and prospective contract terms with existing and prospective customers, accounts and other persons or entities with whom FARO has or contemplates a business relationship; actual or potential customers and purchasers; confidential information of any customer; products; product designs; design documentation; formulas; concepts; inventions; research; methods; processes; operations; product uses; product quality analysis; and other information related to the Business that is not generally publicly known. "Confidential Information" shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right or privilege of Employer.

c. "Customer" means any individual or entity to whom Employer has sold products or services related to the Business, and with whom Employee had contact, alone or in conjunction with others, on behalf of Employer during the twelve (12) months immediately prior to the termination of his or her employment.

d. "Prospective Customer" means any individual or entity who is not a Customer, to whom Employer has marketed or presented products or services related to the Business, and with whom Employee had contact, alone or in conjunction with others, on behalf of Employer during the twelve (12) months immediately prior to the termination of his or her employment.

e. "Trade Secrets" shall mean all information, without regard to form, including, but not limited to, technical or nontechnical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, distribution lists or a list of actual or potential customers, advertisers or suppliers which is not commonly known by or available to the public and which information: (A) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Without limiting the foregoing, Trade Secrets include any documents or information that constitute a "trade secret(s)" under the common law or statutory law of the State of Florida and generally includes all source codes and object codes for Employer software, all buyer and seller information and all lists of clients or suppliers to the extent that such information fits within the Florida Trade Secrets Act. Nothing in this Agreement is intended, or shall be construed, to limit the definitions or protections of the Florida Trade Secrets Act or any other applicable law protecting trade secrets or other confidential information. Trade Secrets shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right or privilege of Employer.

2. **Acknowledgement of FARO's Right To Protection of Business Interests.** Employee acknowledges and agrees that this Agreement, including but not limited to the covenants not to compete contained herein, are necessary to allow FARO to protect its legitimate business interests, including but not limited to its Confidential Information and customer goodwill. Accordingly, Employee agrees that this Agreement, including but not limited to the covenants not to compete contained herein, are reasonable and necessary to allow FARO to protect its legitimate business interests.


© 2015 FARO


EXHIBIT 1

3. **Confidentiality Restriction.**

a. **Nature and Restriction.** Employee covenants and agrees that: (i) during his or her employment with Employer he or she will not use or disclose any Trade Secrets or Confidential Information of Employer other than as necessary in connection with the performance of his or her duties for Employer, and (ii) for a period of five (5) years immediately following the termination of his or her employment with Employer, Employee shall not, directly or indirectly, intentionally, or negligently, in any fashion, form, or manner, transmit, divulge, communicate, or disclose any Trade Secrets or Confidential Information of Employer to any person and shall not make use of any such Trade Secrets or Confidential Information, directly or indirectly, for himself or herself or others, without the prior written consent of Employer, except for a disclosure that is required by any law or order, in which case Employee shall provide Employer prior written notice of such requirement and an opportunity to contest such disclosure. However, to the extent that such information is a "trade secret" as that term is defined under a state or federal law, this subparagraph is not intended to, and does not, limit Employer's rights or remedies thereunder, and the time period for prohibition on disclosure or use of such information is until such information becomes generally known to the public through the act of one who has the right to disclose such information without violating any legal right or privilege of Employer. Notwithstanding anything herein to the contrary, nothing in this agreement shall (i) prohibit Employee from making reports of possible violations of federal law or regulation to any governmental agency or entity in accordance with the provisions of and rules promulgated under Section 21F of the Securities Exchange Act of 1934 or Section 806 of the Sarbanes-Oxley Act of 2002, or of any other whistleblower protection provisions of state or federal law or regulation, or (ii) require notification or prior approval by Employer of any reporting described in clause (i).

b. **Prior Confidentiality Restrictions.** Employee covenants and agrees that Employee will not disclose to FARO or otherwise use in the course of employment with FARO any confidential or trade secret information that is subject to any agreements to which Employee is bound that arose prior to employment with FARO.

c. **Return of Information.** Employee agrees that he or she shall return to Employer's offices in Lake Mary, Florida, all Trade Secrets, Confidential Information, documents, and other property of Employer immediately upon the termination of his or her employment with Employer or upon any earlier request by Employer.

d. **Effect of Disclosure.** Employee acknowledges that any disclosure to any third party of Trade Secrets or Confidential Information not expressly allowed by this Agreement is detrimental to the Employer. In the event that any Trade Secret or Confidential Information is disclosed by Employee in violation of this Agreement, Employee shall be immediately, directly, and principally liable, with no limitation, for any and all costs, claims and damages (including, but not limited to, special, indirect, incidental and consequential damages, and reasonable attorneys' fees and costs of litigation) sustained by Employer as a result of such disclosure.

e. **Consideration For Disclosure of Trade Secrets and Confidential Information.** Employee understands and agrees that he or she has entered into this Agreement and, if applicable, the Non-Competition and Non-Solicitation Addendum referenced in this Agreement, in consideration for and as a condition of Employer's agreement to provide Employee access to Employer's Confidential Information and Trade Secrets.

4. **Assignment of Work Product; Disclosure; Confidentiality.**

a. If at any time or times during Employee's employment with FARO, Employee shall (either alone or with others) make, conceive, create, discover or reduce to practice any invention, idea, product, process, formula, method, plans, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-how, trade secret or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under copyright, trademark or similar statutes or subject to analogous protection) that (i) relates to the Business of FARO, (ii) results from tasks assigned to the Employee by FARO or (iii) results from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by FARO (herein called "Work Product"), such Work Product and the benefits thereof shall immediately become the sole and absolute property of FARO and its successors and assigns.

b. Without further consideration, upon the earlier of the making, conception, creation, discovery or reduction to practice of such Work Product, whether solely or jointly with others, Employee gives, transfers and hereby assigns to Employer (or to any agent, nominee or assignee, as requested by Employer) Employee's right, title and interest to all such Work Product and all intellectual property rights related thereto.

c. Employee agrees to fully disclose exclusively to Employer all Work Product. All disclosures of Work Product are to be made in writing and promptly after the earlier of the making, conception, creation, discovery or reduction to

DocuSign Envelope ID: 159B6688-AB5F-44E7-92AF-5D9DB508D38E

practice of such Work Product. For the avoidance of doubt, Employer shall own all Work Product regardless of whether Employee actually discloses such Work Product to Employer.

d. During the period of Employee's employment with Employer and at all times after the termination thereof, Employee agrees to provide all reasonably necessary assistance to Employer (including but not limited to testifying in any proceedings or suit, and executing any and all applications, assignments, or other documents or instruments): (1) in connection with Employer seeking to protect any Work Product, including but not limited to the preparation, filing and/or prosecution of any patent applications, trademarks or trade names or copyrights in the United States and any foreign country (as well as any state or other subdivision thereof); and the assertion of any such patents, trademarks, trade names or copyrights against a third party; and/or (2) to vest Employer (and its successors and assigns) with all right, title and interest in the Work Product. Should Employee fail or refuse to provide such assistance and/or execute any such document, Employee hereby irrevocably appoints Employer as its attorney-in-fact to prepare and/or execute such documents in the name of Employee and on his/her behalf, and to institute and prosecute any proceedings as FARO may deem necessary or appropriate to secure, protect, or enforce the Work Product.

e. Employee represents and warrants that there are no ideas, products, formulas, methods, plans, developments, improvements or patentable inventions in any way related to the Business which Employee desires to exclude from the operation of this Agreement, except those, if any, designated by a patent number, application serial number or brief description where no application has been filed, on the list attached hereto as **Exhibit A** and signed by Employee and Employer.

f. Employer allows certain of its employees to have access to the following on-line services: Microsoft Exchange, all FARO servers, and the Internet. Employee shall use such services in connection with the Business and in accordance with FARO policies and procedures, as they may change from time to time, which limit use of such services for personal reasons or other purposes not related to the Business. Furthermore, Employee is advised that under certain circumstances transmission of data or messages on the Internet or through Internet e-mail is not secure and that the transmission of Confidential Information on the Internet or through Internet e-mail must comply with Employer-established appropriate safeguards against the interception or misdelivery of such information including, but not limited to the establishment of firewalls, encryption methods, or other technology that will prevent the unintended interception of data transmission by third parties on the Internet or any other on-line service.

g. The foregoing obligations of confidentiality shall cease to apply to such parts of the Confidential Information if the information becomes general public knowledge through no fault of Employee or if Employee has the prior written permission of FARO.

h. Upon termination of employment for whatever reason, Employee represents, warrants, covenants and agrees to deliver to Employer at Employer's offices in Lake Mary, Florida, all Confidential Information (including but not limited to all books, records, products, formulas, manuals, letters, notes, memoranda, notebooks, sketches, drawings, plans, equipment, computer files and spreadsheets, and all other documents or materials that comprise Confidential Information, and also all copies of any of the foregoing), which are in Employee's or his agents' or affiliates' possession or control, and Employee specifically agrees that Employee shall not retain any copies or reproductions of such Confidential Information.

5. **Non-Competition and Non-Solicitation.** If a "Non-Competition and Non-Solicitation Agreement" is attached hereto, the Employee agrees to the terms thereof, and such Non-Competition and Non-Solicitation Agreement is hereby incorporated into and made part of this Agreement.

Such Addendum is ___ is not ___ attached.

6. **Remedies:** The failure of the Employee to comply with the terms of this Agreement shall be cause for immediate dismissal from employment, and in addition Employer shall have the following remedies:

a. **Indemnification.** Employee hereby agrees to indemnify the Employer in respect of any and all claims, losses, costs, liabilities and expenses (including reasonable attorneys' and legal assistants' fees) directly or indirectly resulting from or arising out of any breach of this Agreement, including for appeals.

b. **Injunctive Relief.** Employee admits and agrees that Employee's breach of the Agreement, including the confidentiality restrictions and, if applicable, the non-compete and non-solicitation restrictions would result in irreparable harm to Employer, and that Employer's remedy at law for such a breach will be inadequate. Accordingly, it is agreed that Employer shall be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief to enforce the provisions of this Agreement, which injunctive relief shall be in addition to any other rights or remedies available to Employer. In any action or

proceeding by Employer to obtain a temporary restraining order and/or preliminary injunction, Employee hereby agrees to waive the necessity of the Employer's posting an injunction bond in order to obtain the temporary restraining order and/or preliminary injunction. Employee also agrees that he or she shall be responsible for all damages incurred by Employer due to any breach of the restrictive covenants contained in this Agreement. If Employer's action for a temporary restraining order and/or motion for preliminary injunction is granted in whole or in part and Employer is ultimately unsuccessful in obtaining a permanent injunction to enforce the covenant, Employee hereby waives any and all rights he or she may have against the Employer for any injuries or damages, including consequential damages, sustained by Employee and arising directly or indirectly from the issuance of the temporary restraining order and/or preliminary injunction.

c. **Other Remedies.** In addition to injunctive relief, FARO shall be entitled to any other remedy available in law or equity by reason of Employee's breach or threatened breach of the restrictions contained herein.

d. **Recovery of Attorneys' Fees and Costs.** If Employer engages the services of an attorney or any other third party or in any way initiates legal action to enforce its rights under this Agreement and Employer prevails in its legal action, Employee agrees to pay to the Employer all costs and expenses incurred by Employer relating to the enforcement of this Agreement (including reasonable attorneys' and legal assistants' fees before, at, and after trial and in appellate, bankruptcy and probate proceedings).

7. **Governing Law.** This Agreement shall be governed by and construed according to the laws of the State of Florida, without regard to its conflicts of law principles.

8. **Venue and Forum Selection Clause; Consent to Jurisdiction.** Any action at law, suit in equity, or other judicial proceeding arising out of or related to this Agreement shall be instituted and maintained in the Courts in and for Orange County, Florida. Each party waives the right to change venue. Employee agrees to exclusively submit to personal jurisdiction in the federal and state courts in or for Orange County, Florida and no other place. Employee agrees that any action at law, suit in equity, or other judicial proceeding to enforce this Agreement, as well as any action at law, suit in equity, or other judicial proceeding relating to or arising out of this Agreement, shall be filed only in: (a) the United States District Court for the Middle District of Florida, Orlando Division; or (b) the Business Court of the Ninth Judicial Circuit Court of Orange County, Florida. With respect to any such court action, Employee hereby (a) irrevocably submits to the personal jurisdiction of such courts; (b) consents to service of process; (c) consents to venue; and (d) waives any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction, service of process, or venue. Both parties hereto further agree that the Business Court of the Ninth Judicial Circuit Court of Orange County, Florida and the United States District Court for the Middle District of Florida, Orlando Division, are convenient forums for any dispute that may arise herefrom and that neither party shall raise as a defense that such courts are not convenient forums.

9. **Assignment of Rights.** FARO has the right to assign or transfer this Agreement, including any of its rights hereunder to any assignee or successor of FARO, which assignee or successor is then expressly authorized to enforce the terms of this Agreement. This Agreement is personal to the Employee and not assignable or transferable by Employee and any attempt to do so shall be void.

10. **Modification.** This Agreement contains the entire Agreement of the parties concerning the subject matter hereof. This Agreement shall not be amended except by a writing signed by both FARO and Employee.

11. **Waiver.** No delay or failure by Employer in exercising any of its rights, remedies, powers, or privileges hereunder, at law or in equity, and no course of dealing between Employer and Employee or any other person shall be deemed to be a waiver by Employer of any such rights, remedies, powers, or privileges, even if such delay or failure is continuous or repeated, nor shall any single or partial exercise of any right, remedy, power, or privilege preclude any other or further exercise thereof by Employer or the exercise of any other right, remedy, power, or privilege by Employer.

12. **Effect of Prior Agreements.** Except as otherwise provided in this Section, this Agreement, including the exhibits hereto, embodies the entire agreement and understanding of Employer and Employee in respect of the matters set forth herein and supersedes all prior agreements, representations, warranties, promises, covenants, arrangements, communications and understandings, oral or written, express or implied, between the parties with respect to such transactions. If this Agreement is held to be void or unenforceable for any reason, then the terms and provisions of any prior version of this "Intellectual Property and Confidentiality Agreement" (including any Non-Competition and Non-Solicitation Addendum) signed by Employee shall remain in full force and effect.

13. **Construction.** The parties intend that this Agreement provides FARO with the maximum protection allowed by law. Accordingly, if a court determines that any restrictions of this Agreement are unenforceable because they are overly broad or


© 2015 FARO

DocuSign Envelope ID: 159B6688-AB5F-44E7-92AF-5D9DB508D38E

not reasonably necessary to protect FARO's legitimate business interests, the parties agree that the Court should interpret and enforce such restrictions in the manner necessary to provide FARO with the maximum protection allowed by law. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. The existence of any claim or cause of action against of the Employee against Employer shall not constitute a defense to enforcement by Employer of any of the terms and conditions of this Agreement. Should any part or provision of any covenant be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Agreement.

14. **Miscellaneous.** When used herein, one gender means any gender. The term "I", "me" or "mine" means the Employee. Any use of the singular shall include plural and vice versa. Use of the word "shall" means such action is mandatory. The title of this Agreement and the paragraph headings are used for the purpose of convenience only and shall not be used to interpret or explain any portion of the text hereof.

15. **At-Will Employment**. Notwithstanding anything to the contrary, Employee shall at all times be an employee-at-will. This Agreement is not intended to create a contract of employment between FARO and Employee. FARO maintains its policy of employment-at-will.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement the day and year indicated below.

Employee Signature: Gregory Lepere

Print Name: Gregory Lepere

Date: 10/27/2021

FARO Technologies,

By: KJ Joshi

Print Name: KJ Joshi

Title: Sr. People Operations Manager

Date: 10/28/2021


© 2015 FARO

# Exhibit B

DocuSign Envelope ID: 156D6E41-4BAF-4421-B0F4-FFDF4AFEA44E

# NON-COMPETITION AND NON-SOLICITATION ADDENDUM TO INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT

Employee hereby further covenants and agrees to the following:

**A. Acknowledgment.**

Employee acknowledges and agrees that, solely as a result of Employee's employment with FARO and over the course of Employee's employment with FARO, Employee will: (1) be provided with special, unique, and extraordinary training, education and experience related to the Business; (2) be exposed to and/or in a position to generate Confidential Information of FARO; and (3) as a Sales Employee (as defined below), generate customer goodwill on behalf of FARO. Employee further acknowledges and agrees that FARO makes use of its Confidential Information throughout the world and invests significant time and money, including Employee's salary, to provide Employee with such special, unique, and extraordinary training, education and experience related to the Business and to generate customer goodwill on behalf of FARO, all of which are legitimate business interests of FARO. Employee further acknowledges and agrees that the restrictions in this Addendum are reasonable and necessary to allow FARO to protect its legitimate business interests. In consideration of the foregoing and of the benefits generally provided to the Employee by Employer, and in connection with FARO's protection of its legitimate business interests, Employee agrees to abide and be bound by the restrictions of this Addendum, which restrictions are intended by the parties to extend to any and all activities of the Employee, whether as an independent contractor, partner or joint venturer, or as an officer, director, stockholder, agent, employee or salesman for any person, firm, partnership, corporation or other entity, or otherwise.

**B. Additional Definitions.**

"FARO Competitor" means (i) any business or enterprise that provides goods and/or services similar to or competitive with FARO (each such business or enterprise, a "Competitor"), including, without limitation, those persons or entities identified on Schedule 1 as current competitors of FARO as of the date hereof or (ii) any of such Competitor's subsidiaries, affiliates, agents or distributors, irrespective or whether the subsidiary, affiliate, agent or distributor itself provides goods and/or services similar to or competitive with FARO. As used in this definition, "affiliate" includes any entity, business or enterprise that, directly or indirectly, controls a Competitor or is under common control through another person or entity with a Competitor. The terms "controls," "controlled by," and "under common control" mean, when used with respect to any specified legal entity, the power to direct the management and policies of such entity, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise.

"Restricted Period" means the term of Employee's employment with FARO and for a period of twenty-four months after the date Employee's employment with FARO is terminated for any reason.

"Sales Employee" means any Employee that deals with Customers and Prospective Customers with the intention of producing sales and represents FARO with respect to such Customers and Prospective Customers within a designated geographic territory.

**C. Non-Competition.**

In order to protect FARO's Trade Secret and Confidential Information, third-party goodwill and other legitimate business interests, Employee acknowledges and agrees that during the Restricted Period, Employee will not, without FARO's express written permission, directly or indirectly, assist, be employed by, consult with, or provide services to any FARO Competitor. Employee understands and agrees that, during the Restricted Period, he is and will be subject to the restrictions set forth in this Paragraph C anywhere within the geographic boundaries of the continental United States; provided, however, that Sales Employees shall be subject to the restrictions set forth in this Paragraph C during the Restricted Period within the geographic territory that the Employee represented for the Employer within the twenty-four (24) months prior to the termination of employment.



EXHIBIT 1

**D. Non-Solicitation.**

During the Restricted Period, Employee shall not, without the prior written permission of Employer, directly or indirectly, for himself or on behalf of any other person or entity, (i) solicit, call upon, encourage or contact, or attempt to solicit, call upon, encourage or contact any Customer or Prospective Customer of the Employer for purposes of providing products or services competitive with the Business or causing such person or entity to terminate their business relationship with Employer or (ii) accept business from or provide goods or services to any Customer or Prospective Customer of the Employer.

**E. Non-Recruitment.**

During the Restricted Period, Employee shall not, directly or indirectly, without the prior written permission of Employer, solicit or induce, or attempt to solicit or induce, any employee of Employer to terminate his or her relationship with Employer and/or to enter into an employment or agency relationship with Employee or with any other person or entity with whom Employee is affiliated, provided that the restriction in this section shall apply only to employees of Employer with whom Employee worked by virtue of and during his or her employment with Employer.

**F. Miscellaneous.**

a. The period of time during which Employee is prohibited from engaging in certain business practices under this Addendum shall be extended by the length of time during which Employee is in breach of such covenants.

b. It is understood by and between the parties hereto that the restrictive covenants set forth in this Addendum hereof are essential elements of the employment arrangement between Employee and Employer, and that but for such covenants, Employer would not have agreed to hire Employee. The existence of any claim or cause of action of the Employee against Employer shall not constitute a defense to the enforcement by Employer of such covenants. The restrictive covenants, and rights and protections provided by the restrictive covenants, are assignable by Employer, but not by Employee.

c. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of any covenant be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Agreement. If any portion of the foregoing provisions is found to be invalid or unenforceable by a court of competent jurisdiction because its duration, the territory, the definition of activities or the definition of information covered is considered to be invalid or unreasonable in scope, the invalid or unreasonable term shall be redefined, or a new enforceable term provided, such that the intent of Employer and Employee in agreeing to the provisions of this Agreement will not be impaired and the provision in question shall be enforceable to the fullest extent of the applicable laws.

d. Employee shall, no later than the last day of his or her employment, deliver to Employer at its offices in Lake Mary, Florida a written, signed and notarized confirmation that Employee is aware of his or her obligations under this Non-Competition and Non-Solicitation Addendum and that Employee will comply with its terms.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement the day and year indicated below.

Employee Signature: Gregory Lepere

Print Name: Gregory Lepere

Date: 10/27/2021


© 2015 FARO

DocuSign Envelope ID: 156D6E41-4BAF-4421-B0F4-FFDF4AFEA44E

FARO Technologies, I

By: KJ Joshi ______________

Print Name: KJ Joshi

Title: ______________

Date: 10/28/2021

DocuSign Envelope ID: 156D6E41-4BAF-4421-B0F4-FFDF4AFEA44E

**SCHEDULE 1**
**TO NON-COMPETITION AND NON-SOLICITATION ADDENDUM**
**TO INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT**

**List of Current Competitors:**

Aligned Vision
Artec Europe, S.a.r.l
Automated Precision, Inc. (API)
Basis Software, Inc. (Surphaser)
Breuckmann GmbH
Cambridge Technology
Cimcore
Cognitens
Creaform, Inc.
Etalon AG
Geodetic Systems, Inc. (GSI)
Gerber Technology LLC
Gesellschaft für Optische Messtechnik (GOM)
Hexagon
Kreon Technologies
Kosaka Laboratory, Ltd.
Lap Laser
Leica Geosystems
Mantis Vision
Metronor
Mitutoyo
Nikon
Northern Digital, Inc. (NDI)
Novanta
Perceptron
Raylase
RIEGL Laser Measurement Systems GmbH
Romer
Scan Lab
Scanner Max
SL-Laser
Soatec, Inc.
Sunny Technology
Steinbichler
Theometrics
Topcon Positioning Systems
Trimble
Zoller + Fröhlich GmbH (Z+F)
Z-Laser

**FARO Representative's Initials** kJ

**Employee's Initials** GL


**© FARO Technologies, Inc.**

EXHIBIT 1

# Exhibit C

DENTONS

**Fridrikh V. Shrayber**
Shareholder

fred.shrayber@dentons.com
D 412-297-4612

Dentons Cohen & Grigsby P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
United States

dentons.com

May 1, 2026

***Via Federal Express and Email***

Jennifer Allison
SVP, Chief Legal Officer
10368 Westmoor Drive
Westminster, CO 80021
jennifer_allison@trimble.com

Gregory Lepere
695 Manhattan Drive, Unit 122
Boulder, CO 80303
gregory_lepere@trimble.com

***Re: FARO Technologies, Inc.***

Dear Ms. Allison and Mr. Lepere,

This firm represents FARO Technologies, Inc. ("FARO" or the "Company"). Our client has learned that one of its former high-level executives, Gregory Lepere, recently accepted an employment position with Trimble, Inc. ("Trimble") in violation of his post-employment contractual obligations to FARO. This letter is intended to serve as FARO's formal notice that Mr. Lepere and Trimble have violated FARO's legal rights, and the Company requires the relief set forth in this letter.

Mr. Lepere was formerly employed by FARO as a Senior Director and Vice President, Product Marketing. As an express condition of his employment with the Company, Mr. Lepere signed an Intellectual Property and Confidentiality Agreement and an accompanying a Non-Competition and Non-Solicitation Addendum (together, the "Agreement") dated October 28, 2021. A copy of the Agreement is enclosed with this letter.

Pursuant to the Agreement, Mr. Lepere promised to safeguard the Company's Confidential Information. He agreed that—

> for a period of five (5) years immediately following the termination of his or her employment with [FARO], [Mr. Lepere] shall not, directly or indirectly, intentionally, or negligently, in any fashion, form, or manner, transmit, divulge, communicate, or disclose any Trade Secrets or Confidential Information of [FARO] to any person and shall not make use of any such Trade Secrets or Confidential Information, directly or indirectly, for himself or herself or others, without the prior written consent of [FARO] . . . .

(Agreement § 3(a).) The Agreement defines "Confidential Information" broadly to include the following:



EXHIBIT 1

> information, other than Trade Secrets, which relates to [FARO], [FARO's] activities, [FARO's] business or [FARO's] suppliers or customers that is not generally known by persons not employed by [FARO], and which is or has been disclosed to [Mr. Lepere] or of which [Mr. Lepere] became aware as a consequence of or through his or her relationship to [FARO]. This includes but is not limited to FARO's know-how; accounts; pricing and cost information; marketing techniques and plans; computer programs and software; coding systems and processes; computer networking concepts and processes; source code; contract terms and prospective contract terms with existing and prospective customers, accounts and other persons or entities with whom FARO has or contemplates a business relationship; actual or potential customers and purchasers; confidential information of any customer; products; product designs; design documentation; formulas; concepts; inventions; research; methods; processes; operations; product uses; product quality analysis; and other information related to the Business that is not generally publicly known.

(*Id.* § 1(b).) "Business" is defined in the Agreement as

> (1) all aspects related to 3-D measurement, imaging or realization systems, including but not limited to the design, development, manufacture, marketing, sale, offer for sale and support of such 3-D measurement, imaging or realization systems, and (2) any other technology, product, process, apparatus, service, research or development on which [Mr. Lepere] worked or had access to Confidential Information while employed by FARO.

(*Id.* § 1(a).)

Mr. Lepere acknowledged the critical importance of FARO's proprietary information. He agreed that any disclosure by him of any Confidential Information or Trade Secrets to a third party would be detrimental to FARO and would subject him to direct liability for "any and all costs, claims and damages (including, but not limited to, special, indirect, incidental and consequential damages, and reasonable attorneys' fees and costs of litigation) sustained by [FARO] as a result of such disclosure." (*Id.* § 3(d).)

Pursuant to the Agreement, Mr. Lepere also agreed to restrict the scope of his post-employment competitive conduct for a period of 24 months after his disassociation from the Company, including in the following particulars (among others):

- Mr. Lepere promised that he would not "directly or indirectly, assist, be employed by, consult with, or provide services to any FARO Competitor . . . anywhere within the geographic boundaries of the continental United States"; and

- Mr. Lepere promised that would not "directly or indirectly, for himself or on behalf of any other person or entity, (i) solicit, call upon, encourage or contact, or attempt to solicit, call upon, encourage or contact any Customer or Prospective Customer of the Employer for purposes of providing products or services competitive with the Business or causing such person or entity to terminate their business relationship with Employer or (ii) accept business from or provide goods or services to any Customer or Prospective Customer of the Employer."

(*Id.* at Addendum §§ (C)-(D).) Critically, Trimble is expressly listed in the list of companies that are identified as FARO's Competitors in the Agreement. (*Id.* (B) & Schedule 1.)

Mr. Lepere acknowledged that as a result of his employment with FARO, he would be privy to the Company's proprietary confidential information and receive specialized training and expertise. (*Id.* § (A).) He also acknowledged that his restrictions "are reasonable and necessary to allow FARO to protect its legitimate business interests." (*Id.*) To that end, Mr. Lepere agreed that his restrictive covenants "are essential elements of the employment arrangement between" him and FARO, "and that but for such covenants, [FARO] would not have agreed to hire [Mr. Lapere]." (*Id.* § (F)(b).) Notably, the Agreement also contains a blue-pencil and severability clause. (*Id.* § (F)(c).)

The Agreement contains several provisions that provide additional protection to FARO against Mr. Lepere's breaches of his obligations to the Company. For instance, Mr. Lepere agreed under the Agreement to indemnify FARO for "any and all claims, losses, costs, liabilities and expenses (including reasonable attorneys' and legal assistants' fees) directly or indirectly resulting from or arising out of any breach of this Agreement." (Agreement § 6(a).) He also agreed that FARO would be entitled to injunctive relief to remedy his actual or threatened breach of his confidentiality, non-compete or non-solicit obligations. (*Id.* § 6(b).) The Agreement expressly provides that Mr. Lepere will be responsible for FARO's costs and expenses, including its attorneys' fees, incurred in enforcing its rights under the Agreement. (*Id.* § 6(d).)

Mr. Lepere resigned from his position with FARO in September 2025. At the time of his resignation, the Company specifically asked Mr. Lepere about his future employment plans. In response, Mr. Lepere assured the Company he would not work for a FARO Competitor and would comply fully with his post-employment contractual obligations to FARO.

FARO recently learned that Mr. Lepere's assurances have been proven false. In particular, the Company was recently alarmed to learn that Mr. Lepere has accepted an employment position with Trimble in or around January 2026. As Mr. Lepere's Agreement makes expressly clear, Trimble is a *direct competitor* of FARO. Compounding the Company's concerns, Mr. Lepere's responsibilities with Trimble substantially overlap with his responsibilities at FARO. During his employment with FARO, Mr. Lepere was a highly paid executive-level leader responsible for the development and execution of the Company's product roadmap. He was responsible for delivering market-leading products and worked closely with other FARO departments to achieve the Company's objectives. He was tasked with overseeing the development, launch, marketing and sales efforts with respect to the Company's 3D-imaging, LIDAR and other optical processing solutions, including the Company's Focus Laser Scanner system. He was responsible for the Architecture, Engineering, Construction; Public Safety Assurance; and Geospatial market segments. He held worldwide pricing authority and discount approval rights for all customer quotations. By virtue of his role, Mr. Lepere knew every intimate detail of FARO's products, customers, regions, pricing, cost and other highly sensitive strategic information.

Mr. Lepere's position with Trimble is substantially identical to his role with FARO – i.e., he is Vice President, Strategic Initiatives in the Geospatial market. He is responsible for product design, development and marketing of 3D imaging solutions, strategic marketing, portfolio management, and team process improvement. Mr. Lepere's position with Trimble constitutes a material breach of his non-competition obligations to FARO. Further, given the extensive overlap in his duties and responsibilities, it is inevitable that Mr. Lepere will be – and, in fact, has been – called up to use and disclose his knowledge of the Company's Confidential Information and Trade Secrets. To be sure, the Company does not yet know the full extent of Mr. Lepere's and Trimble's misconduct. Even at this early stage, however, FARO has determined that shortly after hiring Mr. Lepere, Trimble substantially discounted its X9 laser scanner system in a manner designed to undercut FARO's Focus Laser Scanner system. Mr. Lepere knows every intricate detail of that FARO product, its pricing and its costs. Trimble's efforts to undercut FARO in the marketplace with respect to the Focus Laser Scanner system (among others) followed closely on the heels of Mr. Lepere's hire. Trimble is not innocent bystander in this situation: it has knowingly hired Mr.

Lepere in violation of his contractual obligations to FARO and deliberately placed him in a position where he has and will misappropriate FARO's Confidential Information and Trade Secrets.

Please be advised that FARO is entitled to injunctive relief (among other remedies) against a former employee and his new employer where, as here, the employee violates his non-compete obligations, *see, e.g.*, *Foundever Operating Corp. v. Hahn*, No. 8:23-CV-1495-CEH-UAM, 2023 WL 7496150, at *1 (M.D. Fla. Nov. 13, 2023), and has used or disclosed Company's proprietary and trade secret information, *see, e.g.*, *Q. Grady Minor & Assocs., LLC v. Blueshore Eng'g, LLC*, No. 2:24-CV-634-JLB-KCD, 2024 WL 336127 (M.D. Fla. July 10, 2024); *see also* §§ 688.001–688.009, Fla. Stat.; 18 U.S.C. § 1836. Further, please be advised that Trimble's active involvement in Mr. Lepere's conduct and its continued employment of Mr. Lepere in breach of his non-compete and confidentiality obligations subjects it to liability for tortious interference with the Company's contractual relationships, among other legal claims. *See, e.g.*, *Se. Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A.*, 50 So. 3d 21 (Fla. Dist. Ct. App. 2010).

Against that factual and legal backdrop, FARO demands the following assurances by no later than **5:00 p.m. on Wednesday, May 5, 2026**. ***First***, FARO demands that Mr. Lepere resign from his employment with Trimble or that Trimble terminate Mr. Lepere's employment, effective immediately. ***Second***, FARO demands assurances that Mr. Lepere will cease any and all conduct that violates his contractual obligations to the Company, including his non-solicitation, non-compete, and confidentiality obligations. ***Third***, FARO demands assurances that Mr. Lepere has previously returned to FARO, and that neither Trimble nor Mr. Lepere have in their possession, any of the Company's Confidential Information or Trade Secrets. ***Fourth***, FARO demands an accounting of all Confidential Information or Trade Secrets that Mr. Lepere has used or disclosed to or for the benefit of Trimble.

Given the reasonable foreseeability of litigation, both Mr. Lepere and Trimble have an affirmative legal obligation to preserve and not to alter or delete all things, documents and information that relate in any way to FARO's dispute with Mr. Lepere and Trimble. That obligation extends to all repositories of information (electronic and hard-copy) and all means of communication, including documents, letters, emails, instant messages, text messages, chat messages, voicemails, and all other means by which information is recorded or communicated.

Please note that FARO takes very seriously the enforcement of its contractual rights and the protection of its proprietary information. The Company is fully prepared to take whatever legal action may be necessary to protect its legitimate business and legal interests in this case. That said, I remain hopeful that you will provide the aforementioned assurances in a timely manner so as to enable FARO to consider the possibility of a non-litigated resolution of this dispute.

This letter is sent without prejudice to FARO's rights, all of which are expressly reserved.

I look forward to your timely response.

Very truly yours,

Dentons Cohen & Grigsby P.C.

By: */s/ Fred V. Shrayber*

FVS
Enclosure
5440544.v1

DocuSign Envelope ID: 159B6688-AB5F-44E7-92AF-5D9DB508D38E

# INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT

This **INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT** (the "Agreement"), effective as of ________, 201_, is made by and between FARO Technologies, Inc., a Florida Corporation, including its subsidiaries and affiliates (hereinafter collectively "FARO" or "Employer"), and ______________________________ ("Employee").

In consideration of the Employee's employment by FARO, the compensation paid and to be paid to Employee by FARO, and Employer's agreement to provide Employee access to Employer's Confidential Information (as defined below) and Trade Secrets (as defined below and as defined under Florida law) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee hereby warrants and agrees to be legally bound as follows:

1. **Definitions**

a. "Business" means (1) all aspects related to 3-D measurement, imaging or realization systems, including but not limited to the design, development, manufacture, marketing, sale, offer for sale and support of such 3-D measurement, imaging or realization systems, and (2) any other technology, product, process, apparatus, service, research or development on which Employee worked or had access to Confidential Information while employed by FARO.

b. "Confidential Information" shall mean information, other than Trade Secrets, which relates to Employer, Employer's activities, Employer's business or Employer's suppliers or customers that is not generally known by persons not employed by Employer, and which is or has been disclosed to Employee or of which Employee became aware as a consequence of or through his or her relationship to Employer. This includes but is not limited to FARO's know-how; accounts; pricing and cost information; marketing techniques and plans; computer programs and software; coding systems and processes; computer networking concepts and processes; source code; contract terms and prospective contract terms with existing and prospective customers, accounts and other persons or entities with whom FARO has or contemplates a business relationship; actual or potential customers and purchasers; confidential information of any customer; products; product designs; design documentation; formulas; concepts; inventions; research; methods; processes; operations; product uses; product quality analysis; and other information related to the Business that is not generally publicly known. "Confidential Information" shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right or privilege of Employer.

c. "Customer" means any individual or entity to whom Employer has sold products or services related to the Business, and with whom Employee had contact, alone or in conjunction with others, on behalf of Employer during the twelve (12) months immediately prior to the termination of his or her employment.

d. "Prospective Customer" means any individual or entity who is not a Customer, to whom Employer has marketed or presented products or services related to the Business, and with whom Employee had contact, alone or in conjunction with others, on behalf of Employer during the twelve (12) months immediately prior to the termination of his or her employment.

e. "Trade Secrets" shall mean all information, without regard to form, including, but not limited to, technical or nontechnical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, distribution lists or a list of actual or potential customers, advertisers or suppliers which is not commonly known by or available to the public and which information: (A) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Without limiting the foregoing, Trade Secrets include any documents or information that constitute a "trade secret(s)" under the common law or statutory law of the State of Florida and generally includes all source codes and object codes for Employer software, all buyer and seller information and all lists of clients or suppliers to the extent that such information fits within the Florida Trade Secrets Act. Nothing in this Agreement is intended, or shall be construed, to limit the definitions or protections of the Florida Trade Secrets Act or any other applicable law protecting trade secrets or other confidential information. Trade Secrets shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right or privilege of Employer.

2. **Acknowledgement of FARO's Right To Protection of Business Interests.** Employee acknowledges and agrees that this Agreement, including but not limited to the covenants not to compete contained herein, are necessary to allow FARO to protect its legitimate business interests, including but not limited to its Confidential Information and customer goodwill. Accordingly, Employee agrees that this Agreement, including but not limited to the covenants not to compete contained herein, are reasonable and necessary to allow FARO to protect its legitimate business interests.

3. **Confidentiality Restriction.**

a. **Nature and Restriction**. Employee covenants and agrees that: (i) during his or her employment with Employer he or she will not use or disclose any Trade Secrets or Confidential Information of Employer other than as necessary in connection with the performance of his or her duties for Employer, and (ii) for a period of five (5) years immediately following the termination of his or her employment with Employer, Employee shall not, directly or indirectly, intentionally, or negligently, in any fashion, form, or manner, transmit, divulge, communicate, or disclose any Trade Secrets or Confidential Information of Employer to any person and shall not make use of any such Trade Secrets or Confidential Information, directly or indirectly, for himself or herself or others, without the prior written consent of Employer, except for a disclosure that is required by any law or order, in which case Employee shall provide Employer prior written notice of such requirement and an opportunity to contest such disclosure. However, to the extent that such information is a "trade secret" as that term is defined under a state or federal law, this subparagraph is not intended to, and does not, limit Employer's rights or remedies thereunder, and the time period for prohibition on disclosure or use of such information is until such information becomes generally known to the public through the act of one who has the right to disclose such information without violating any legal right or privilege of Employer. Notwithstanding anything herein to the contrary, nothing in this agreement shall (i) prohibit Employee from making reports of possible violations of federal law or regulation to any governmental agency or entity in accordance with the provisions of and rules promulgated under Section 21F of the Securities Exchange Act of 1934 or Section 806 of the Sarbanes-Oxley Act of 2002, or of any other whistleblower protection provisions of state or federal law or regulation, or (ii) require notification or prior approval by Employer of any reporting described in clause (i).

b. **Prior Confidentiality Restrictions**. Employee covenants and agrees that Employee will not disclose to FARO or otherwise use in the course of employment with FARO any confidential or trade secret information that is subject to any agreements to which Employee is bound that arose prior to employment with FARO.

c. **Return of Information**. Employee agrees that he or she shall return to Employer's offices in Lake Mary, Florida, all Trade Secrets, Confidential Information, documents, and other property of Employer immediately upon the termination of his or her employment with Employer or upon any earlier request by Employer.

d. **Effect of Disclosure**. Employee acknowledges that any disclosure to any third party of Trade Secrets or Confidential Information not expressly allowed by this Agreement is detrimental to the Employer. In the event that any Trade Secret or Confidential Information is disclosed by Employee in violation of this Agreement, Employee shall be immediately, directly, and principally liable, with no limitation, for any and all costs, claims and damages (including, but not limited to, special, indirect, incidental and consequential damages, and reasonable attorneys' fees and costs of litigation) sustained by Employer as a result of such disclosure.

e. **Consideration For Disclosure of Trade Secrets and Confidential Information**. Employee understands and agrees that he or she has entered into this Agreement and, if applicable, the Non-Competition and Non-Solicitation Addendum referenced in this Agreement, in consideration for and as a condition of Employer's agreement to provide Employee access to Employer's Confidential Information and Trade Secrets.

4. **Assignment of Work Product; Disclosure; Confidentiality.**

a. If at any time or times during Employee's employment with FARO, Employee shall (either alone or with others) make, conceive, create, discover or reduce to practice any invention, idea, product, process, formula, method, plans, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-how, trade secret or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under copyright, trademark or similar statutes or subject to analogous protection) that (i) relates to the Business of FARO, (ii) results from tasks assigned to the Employee by FARO or (iii) results from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by FARO (herein called "<u>Work Product</u>"), such Work Product and the benefits thereof shall immediately become the sole and absolute property of FARO and its successors and assigns.

b. Without further consideration, upon the earlier of the making, conception, creation, discovery or reduction to practice of such Work Product, whether solely or jointly with others, Employee gives, transfers and hereby assigns to Employer (or to any agent, nominee or assignee, as requested by Employer) Employee's right, title and interest to all such Work Product and all intellectual property rights related thereto.

c. Employee agrees to fully disclose exclusively to Employer all Work Product. All disclosures of Work Product are to be made in writing and promptly after the earlier of the making, conception, creation, discovery or reduction to


© 2015 FARO

practice of such Work Product. For the avoidance of doubt, Employer shall own all Work Product regardless of whether Employee actually discloses such Work Product to Employer.

d. During the period of Employee's employment with Employer and at all times after the termination thereof, Employee agrees to provide all reasonably necessary assistance to Employer (including but not limited to testifying in any proceedings or suit, and executing any and all applications, assignments, or other documents or instruments): (1) in connection with Employer seeking to protect any Work Product, including but not limited to the preparation, filing and/or prosecution of any patent applications, trademarks or trade names or copyrights in the United States and any foreign country (as well as any state or other subdivision thereof); and the assertion of any such patents, trademarks, trade names or copyrights against a third party; and/or (2) to vest Employer (and its successors and assigns) with all right, title and interest in the Work Product. Should Employee fail or refuse to provide such assistance and/or execute any such document, Employee hereby irrevocably appoints Employer as its attorney-in-fact to prepare and/or execute such documents in the name of Employee and on his/her behalf, and to institute and prosecute any proceedings as FARO may deem necessary or appropriate to secure, protect, or enforce the Work Product.

e. Employee represents and warrants that there are no ideas, products, formulas, methods, plans, developments, improvements or patentable inventions in any way related to the Business which Employee desires to exclude from the operation of this Agreement, except those, if any, designated by a patent number, application serial number or brief description where no application has been filed, on the list attached hereto as **Exhibit A** and signed by Employee and Employer.

f. Employer allows certain of its employees to have access to the following on-line services: Microsoft Exchange, all FARO servers, and the Internet. Employee shall use such services in connection with the Business and in accordance with FARO policies and procedures, as they may change from time to time, which limit use of such services for personal reasons or other purposes not related to the Business. Furthermore, Employee is advised that under certain circumstances transmission of data or messages on the Internet or through Internet e-mail is not secure and that the transmission of Confidential Information on the Internet or through Internet e-mail must comply with Employer-established appropriate safeguards against the interception or misdelivery of such information including, but not limited to the establishment of firewalls, encryption methods, or other technology that will prevent the unintended interception of data transmission by third parties on the Internet or any other on-line service.

g. The foregoing obligations of confidentiality shall cease to apply to such parts of the Confidential Information if the information becomes general public knowledge through no fault of Employee or if Employee has the prior written permission of FARO.

h. Upon termination of employment for whatever reason, Employee represents, warrants, covenants and agrees to deliver to Employer at Employer's offices in Lake Mary, Florida, all Confidential Information (including but not limited to all books, records, products, formulas, manuals, letters, notes, memoranda, notebooks, sketches, drawings, plans, equipment, computer files and spreadsheets, and all other documents or materials that comprise Confidential Information, and also all copies of any of the foregoing), which are in Employee's or his agents' or affiliates' possession or control, and Employee specifically agrees that Employee shall not retain any copies or reproductions of such Confidential Information.

5. **Non-Competition and Non-Solicitation**. If a "Non-Competition and Non-Solicitation Agreement" is attached hereto, the Employee agrees to the terms thereof, and such Non-Competition and Non-Solicitation Agreement is hereby incorporated into and made part of this Agreement.

Such Addendum is ___ is not ___ attached.

6. **Remedies:** The failure of the Employee to comply with the terms of this Agreement shall be cause for immediate dismissal from employment, and in addition Employer shall have the following remedies:

a. **Indemnification**. Employee hereby agrees to indemnify the Employer in respect of any and all claims, losses, costs, liabilities and expenses (including reasonable attorneys' and legal assistants' fees) directly or indirectly resulting from or arising out of any breach of this Agreement, including for appeals.

b. **Injunctive Relief**. Employee admits and agrees that Employee's breach of the Agreement, including the confidentiality restrictions and, if applicable, the non-compete and non-solicitation restrictions would result in irreparable harm to Employer, and that Employer's remedy at law for such a breach will be inadequate. Accordingly, it is agreed that Employer shall be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief to enforce the provisions of this Agreement, which injunctive relief shall be in addition to any other rights or remedies available to Employer. In any action or



EXHIBIT 1

proceeding by Employer to obtain a temporary restraining order and/or preliminary injunction, Employee hereby agrees to waive the necessity of the Employer's posting an injunction bond in order to obtain the temporary restraining order and/or preliminary injunction. Employee also agrees that he or she shall be responsible for all damages incurred by Employer due to any breach of the restrictive covenants contained in this Agreement. If Employer's action for a temporary restraining order and/or motion for preliminary injunction is granted in whole or in part and Employer is ultimately unsuccessful in obtaining a permanent injunction to enforce the covenant, Employee hereby waives any and all rights he or she may have against the Employer for any injuries or damages, including consequential damages, sustained by Employee and arising directly or indirectly from the issuance of the temporary restraining order and/or preliminary injunction.

c. **Other Remedies**. In addition to injunctive relief, FARO shall be entitled to any other remedy available in law or equity by reason of Employee's breach or threatened breach of the restrictions contained herein.

d. **Recovery of Attorneys' Fees and Costs**. If Employer engages the services of an attorney or any other third party or in any way initiates legal action to enforce its rights under this Agreement and Employer prevails in its legal action, Employee agrees to pay to the Employer all costs and expenses incurred by Employer relating to the enforcement of this Agreement (including reasonable attorneys' and legal assistants' fees before, at, and after trial and in appellate, bankruptcy and probate proceedings).

7. **Governing Law**. This Agreement shall be governed by and construed according to the laws of the State of Florida, without regard to its conflicts of law principles.

8. **Venue and Forum Selection Clause; Consent to Jurisdiction**. Any action at law, suit in equity, or other judicial proceeding arising out of or related to this Agreement shall be instituted and maintained in the Courts in and for Orange County, Florida. Each party waives the right to change venue. Employee agrees to exclusively submit to personal jurisdiction in the federal and state courts in or for Orange County, Florida and no other place. Employee agrees that any action at law, suit in equity, or other judicial proceeding to enforce this Agreement, as well as any action at law, suit in equity, or other judicial proceeding relating to or arising out of this Agreement, shall be filed only in: (a) the United States District Court for the Middle District of Florida, Orlando Division; or (b) the Business Court of the Ninth Judicial Circuit Court of Orange County, Florida. With respect to any such court action, Employee hereby (a) irrevocably submits to the personal jurisdiction of such courts; (b) consents to service of process; (c) consents to venue; and (d) waives any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction, service of process, or venue. Both parties hereto further agree that the Business Court of the Ninth Judicial Circuit Court of Orange County, Florida and the United States District Court for the Middle District of Florida, Orlando Division, are convenient forums for any dispute that may arise herefrom and that neither party shall raise as a defense that such courts are not convenient forums.

9. **Assignment of Rights**. FARO has the right to assign or transfer this Agreement, including any of its rights hereunder to any assignee or successor of FARO, which assignee or successor is then expressly authorized to enforce the terms of this Agreement. This Agreement is personal to the Employee and not assignable or transferable by Employee and any attempt to do so shall be void.

10. **Modification**. This Agreement contains the entire Agreement of the parties concerning the subject matter hereof. This Agreement shall not be amended except by a writing signed by both FARO and Employee.

11. **Waiver**. No delay or failure by Employer in exercising any of its rights, remedies, powers, or privileges hereunder, at law or in equity, and no course of dealing between Employer and Employee or any other person shall be deemed to be a waiver by Employer of any such rights, remedies, powers, or privileges, even if such delay or failure is continuous or repeated, nor shall any single or partial exercise of any right, remedy, power, or privilege preclude any other or further exercise thereof by Employer or the exercise of any other right, remedy, power, or privilege by Employer.

12. **Effect of Prior Agreements**. Except as otherwise provided in this Section, this Agreement, including the exhibits hereto, embodies the entire agreement and understanding of Employer and Employee in respect of the matters set forth herein and supersedes all prior agreements, representations, warranties, promises, covenants, arrangements, communications and understandings, oral or written, express or implied, between the parties with respect to such transactions. If this Agreement is held to be void or unenforceable for any reason, then the terms and provisions of any prior version of this "Intellectual Property and Confidentiality Agreement" (including any Non-Competition and Non-Solicitation Addendum) signed by Employee shall remain in full force and effect.

13. **Construction.** The parties intend that this Agreement provides FARO with the maximum protection allowed by law. Accordingly, if a court determines that any restrictions of this Agreement are unenforceable because they are overly broad or


© 2015 FARO

not reasonably necessary to protect FARO's legitimate business interests, the parties agree that the Court should interpret and enforce such restrictions in the manner necessary to provide FARO with the maximum protection allowed by law. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. The existence of any claim or cause of action against of the Employee against Employer shall not constitute a defense to enforcement by Employer of any of the terms and conditions of this Agreement. Should any part or provision of any covenant be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Agreement.

14. **Miscellaneous.** When used herein, one gender means any gender. The term "I", "me" or "mine" means the Employee. Any use of the singular shall include plural and vice versa. Use of the word "shall" means such action is mandatory. The title of this Agreement and the paragraph headings are used for the purpose of convenience only and shall not be used to interpret or explain any portion of the text hereof.

15. **At-Will Employment.** Notwithstanding anything to the contrary, Employee shall at all times be an employee-at-will. This Agreement is not intended to create a contract of employment between FARO and Employee. FARO maintains its policy of employment-at-will.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement the day and year indicated below.

Employee Signature: Gregory Lepere

Print Name: Gregory Lepere

Date: 10/27/2021

FARO Technologies,

By: KJ Joshi

Print Name: KJ Joshi

Title: Sr. People Operations Manager

Date: 10/28/2021


© 2015 FARO

DocuSign Envelope ID: 156D6E41-4BAF-4421-B0F4-FFDF4AFEA44E

# NON-COMPETITION AND NON-SOLICITATION ADDENDUM TO INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT

Employee hereby further covenants and agrees to the following:

**A. Acknowledgment.**

Employee acknowledges and agrees that, solely as a result of Employee's employment with FARO and over the course of Employee's employment with FARO, Employee will: (1) be provided with special, unique, and extraordinary training, education and experience related to the Business; (2) be exposed to and/or in a position to generate Confidential Information of FARO; and (3) as a Sales Employee (as defined below), generate customer goodwill on behalf of FARO. Employee further acknowledges and agrees that FARO makes use of its Confidential Information throughout the world and invests significant time and money, including Employee's salary, to provide Employee with such special, unique, and extraordinary training, education and experience related to the Business and to generate customer goodwill on behalf of FARO, all of which are legitimate business interests of FARO. Employee further acknowledges and agrees that the restrictions in this Addendum are reasonable and necessary to allow FARO to protect its legitimate business interests. In consideration of the foregoing and of the benefits generally provided to the Employee by Employer, and in connection with FARO's protection of its legitimate business interests, Employee agrees to abide and be bound by the restrictions of this Addendum, which restrictions are intended by the parties to extend to any and all activities of the Employee, whether as an independent contractor, partner or joint venturer, or as an officer, director, stockholder, agent, employee or salesman for any person, firm, partnership, corporation or other entity, or otherwise.

**B. Additional Definitions.**

"FARO Competitor" means (i) any business or enterprise that provides goods and/or services similar to or competitive with FARO (each such business or enterprise, a "Competitor"), including, without limitation, those persons or entities identified on Schedule 1 as current competitors of FARO as of the date hereof or (ii) any of such Competitor's subsidiaries, affiliates, agents or distributors, irrespective or whether the subsidiary, affiliate, agent or distributor itself provides goods and/or services similar to or competitive with FARO. As used in this definition, "affiliate" includes any entity, business or enterprise that, directly or indirectly, controls a Competitor or is under common control through another person or entity with a Competitor. The terms "controls," "controlled by," and "under common control" mean, when used with respect to any specified legal entity, the power to direct the management and policies of such entity, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise.

"Restricted Period" means the term of Employee's employment with FARO and for a period of twenty-four months after the date Employee's employment with FARO is terminated for any reason.

"Sales Employee" means any Employee that deals with Customers and Prospective Customers with the intention of producing sales and represents FARO with respect to such Customers and Prospective Customers within a designated geographic territory.

**C. Non-Competition.**

In order to protect FARO's Trade Secret and Confidential Information, third-party goodwill and other legitimate business interests, Employee acknowledges and agrees that during the Restricted Period, Employee will not, without FARO's express written permission, directly or indirectly, assist, be employed by, consult with, or provide services to any FARO Competitor. Employee understands and agrees that, during the Restricted Period, he is and will be subject to the restrictions set forth in this Paragraph C anywhere within the geographic boundaries of the continental United States; provided, however, that Sales Employees shall be subject to the restrictions set forth in this Paragraph C during the Restricted Period within the geographic territory that the Employee represented for the Employer within the twenty-four (24) months prior to the termination of employment.


© 2015 FARO

**D. Non-Solicitation.**

During the Restricted Period, Employee shall not, without the prior written permission of Employer, directly or indirectly, for himself or on behalf of any other person or entity, (i) solicit, call upon, encourage or contact, or attempt to solicit, call upon, encourage or contact any Customer or Prospective Customer of the Employer for purposes of providing products or services competitive with the Business or causing such person or entity to terminate their business relationship with Employer or (ii) accept business from or provide goods or services to any Customer or Prospective Customer of the Employer.

**E. Non-Recruitment.**

During the Restricted Period, Employee shall not, directly or indirectly, without the prior written permission of Employer, solicit or induce, or attempt to solicit or induce, any employee of Employer to terminate his or her relationship with Employer and/or to enter into an employment or agency relationship with Employee or with any other person or entity with whom Employee is affiliated, provided that the restriction in this section shall apply only to employees of Employer with whom Employee worked by virtue of and during his or her employment with Employer.

**F. Miscellaneous.**

a. The period of time during which Employee is prohibited from engaging in certain business practices under this Addendum shall be extended by the length of time during which Employee is in breach of such covenants.

b. It is understood by and between the parties hereto that the restrictive covenants set forth in this Addendum hereof are essential elements of the employment arrangement between Employee and Employer, and that but for such covenants, Employer would not have agreed to hire Employee. The existence of any claim or cause of action of the Employee against Employer shall not constitute a defense to the enforcement by Employer of such covenants. The restrictive covenants, and rights and protections provided by the restrictive covenants, are assignable by Employer, but not by Employee.

c. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of any covenant be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Agreement. If any portion of the foregoing provisions is found to be invalid or unenforceable by a court of competent jurisdiction because its duration, the territory, the definition of activities or the definition of information covered is considered to be invalid or unreasonable in scope, the invalid or unreasonable term shall be redefined, or a new enforceable term provided, such that the intent of Employer and Employee in agreeing to the provisions of this Agreement will not be impaired and the provision in question shall be enforceable to the fullest extent of the applicable laws.

d. Employee shall, no later than the last day of his or her employment, deliver to Employer at its offices in Lake Mary, Florida a written, signed and notarized confirmation that Employee is aware of his or her obligations under this Non-Competition and Non-Solicitation Addendum and that Employee will comply with its terms.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement the day and year indicated below.

Employee Signature: Gregory Lepere

Print Name: Gregory Lepere

Date: 10/27/2021


© 2015 FARO

DocuSign Envelope ID: 156D6E41-4BAF-4421-B0F4-FFDF4AFEA44E

FARO Technologies, I

By: KJ Joshi

Print Name: KJ Joshi

Title:

Date: 10/28/2021



EXHIBIT 1

DocuSign Envelope ID: 156D6E41-4BAF-4421-B0F4-FFDF4AFEA44E

**SCHEDULE 1**
**TO NON-COMPETITION AND NON-SOLICITATION ADDENDUM**
**TO INTELLECTUAL PROPERTY AND CONFIDENTIALITY AGREEMENT**

**List of Current Competitors:**

Aligned Vision
Artec Europe, S.a.r.l
Automated Precision, Inc. (API)
Basis Software, Inc. (Surphaser)
Breuckmann GmbH
Cambridge Technology
Cimcore
Cognitens
Creaform, Inc.
Etalon AG
Geodetic Systems, Inc. (GSI)
Gerber Technology LLC
Gesellschaft für Optische Messtechnik (GOM)
Hexagon
Kreon Technologies
Kosaka Laboratory, Ltd.
Lap Laser
Leica Geosystems
Mantis Vision
Metronor
Mitutoyo
Nikon
Northern Digital, Inc. (NDI)
Novanta
Perceptron
Raylase
RIEGL Laser Measurement Systems GmbH
Romer
Scan Lab
Scanner Max
SL-Laser
Soatec, Inc.
Sunny Technology
Steinbichler
Theometrics
Topcon Positioning Systems
Trimble
Zoller + Fröhlich GmbH (Z+F)
Z-Laser

**FARO Representative's Initials** kJ ___ **Employee's Initials** GL ___


© FARO Technologies, Inc.