**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| TRIMBLE INC., a Delaware corporation; and GREGORY LEPERE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FARO TECHNOLOGIES, INC., a Florida corporation,<br><br>Defendant. | : | CIVIL DOCKET<br><br>Case No. 1:26-CV-02382 |

**DEFENDANT FARO TECHNOLOGIES, INC.'S**
**MOTION TO TRANSFER OR DISMISS COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2
- A. The Parties and Lepere's Employment with FARO .......... 2
- B. Lepere's Employment Agreement with FARO .......... 3
- C. Lepere's Resignation and Concealed Employment with Trimble .......... 4
- D. FARO's Demand Letter and Trimble's Response .......... 5
- E. FARO's Florida Action .......... 6

III. LEGAL STANDARD .......... 7

IV. LEGAL ARGUMENT .......... 8
- A. The Court Should Transfer This Suit to the Middle District of Florida Pursuant to the Mandatory Forum Selection Clause in Lepere's Employment Agreement .......... 8
  - 1. The Forum Selection Clause is in Lepere's Employment Agreement is Valid, Enforceable, Mandatory and Applicable .......... 8
    - a. The Forum Selection Clause is Valid and Enforceable. .......... 9
    - b. The Forum Selection Clause is Mandatory .......... 11
    - c. The Forum Selection Clause is Applicable to this Dispute. .......... 11
  - 2. The Balance of Public Interest Considerations Heavily Weigh in Favor of Transfer .......... 12
  - 3. The Forum Selection Clause Applies to Both Trimble and Lepere .......... 14
- B. In the Alternative, the Court Should Dismiss the Complaint Pursuant to Rule 12(b)(6) .......... 15
  - 1. C.S. § 8-2-113 Does Not Apply to Plaintiffs' Claims .......... 15
  - 2. Trimble Lacks Standing to Pursue Its Statutory Claims .......... 16
  - 3. Trimble Has Failed to State a Claim for Tortious Interference .......... 17

V. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*,
571 U.S. 49 (2013) .................... passim

*Begley v. Ireson*,
399 P.3d 777 (Colo. App. 2017) .................... 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 9

*Buckhannon v. U.S. West Communications, Inc.*,
928 P.2d 1331 (Colo. App. 1996) .................... 19

*Carr v. Wells*,
No. 20-CV-03319-PAB-SKC, 2022 WL 910953, n.5 (D. Colo. Mar. 28, 2022) .................... 7

*Dupray v. Oxford Ins. Co. TN LLC*,
645 F. Supp. 3d 1095 (D. Colo. 2022) .................... passim

*Edwards Lifesciences LLC v. Thompson*,
No. 24-cv-02558-RMR-KAS, 2026 WL 951017 (D. Colo. Feb. 27, 2026) .................... 15, 16

*Florea v. Hash Map Labs, Inc.*,
No. 8:25-cv-628-TPB-TGW, 2026 WL 274653 (M.D. Fla. Feb. 3, 2026) .................... 12

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*,
148 F.4th 1202 (10th Cir. 2025) .................... 8

*GFA Int'l, Inc. v. Trillas*,
327 So.3d 872 (Fla. Dist. Ct. App. 2021) .................... 14

*Krystkowiak v. W.O. Brisben Cos., Inc.*,
90 P.3d 859 (Colo. 2004) .................... 18

*Morris v. Towers Fin. Corp.*,
916 P.2d 678 (Colo. App. 1996) .................... 10

*Nairn v. JP Morgan Chase & Co.*,
No. 1:24-cv-00064, 2025 WL 4091216 (D. Colo. Feb. 12, 2025) .................... 20

*Nieusuma, Inc. v. Affygility Sols., LLC*,
No. 1:18-cv-2515-RM-KLM, 2019 WL 1468402 n.1 (D. Colo. Apr. 3, 2019) .................... 17

*PFC Payment Sols., LLC v. Element Pmt. Servs., Inc.*,
No. 12-CV-01472-CMA-MJW, 2012 WL 3264305 (D. Colo. Aug. 10, 2012)........ 14, 15

*Pierce v. Green Tree Servicing, LLC*,
No 15-cv-00913-RBJ, 2015 WL 6689487 (D. Colo. Nov. 3, 2015) ............................ 17

*Ray v. Mckinley*, No. 24-CV-01907-SKC-CYC, 2025 WL 1547021 (D. Colo. May 30, 2025), *rep. & recomm. adopted*, No. 1:24-CV-01907-SKC-CYC, 2025 WL 2304781 (D. Colo. Aug. 11, 2025)......................................................passim

*Roberts v. Fain*,
No. 25-cv-04094-NYW-KAS, 2026 WL 1694699 (D. Colo. June 11, 2026)... 12, 13, 14

*Shell v. Am. Fam. Rts. Ass'n*,
No. CIV.A09CV00309MSKKMT, 2010 WL 1348548 (D. Colo. Mar. 31, 2010).......... 20

*Tax Servs. of Am., Inc. v. Mitchell*,
No. 07-CV-00249-REB-PAC, 2007 WL 4522472 (D. Colo. Dec. 18, 2007)......... 18, 19

*West v. Strike Tax Advisory, LLC*,
No. 23-cv-00669-GPG-MEH, 2023 WL 3976431 (D. Colo. May 23, 2023)................ 11

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................... 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| TRIMBLE INC., a Delaware corporation; and GREGORY LEPERE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FARO TECHNOLOGIES, INC., a Florida corporation,<br><br>Defendant. | : : : : : : : : : : : | CIVIL DOCKET<br><br>Case No. 1:26-CV-02382 |

**DEFENDANT FARO TECHNOLOGIES, INC.'S**
**MOTION TO TRANSFER OR DISMISS COMPLAINT**

FARO Technologies, Inc. ("FARO") files this Motion to Transfer or Dismiss Complaint against Trimble Inc. ("Trimble") and Gregory Lepere ("Lepere") ("Plaintiffs").

## I. INTRODUCTION

This case should never have been filed in Colorado, and it does not belong here. Lepere signed an Employment Agreement with FARO that contains a mandatory forum selection clause requiring that all disputes arising out of or related to the Agreement be litigated exclusively in Orange County, Florida. Lepere subsequently resigned from FARO and accepted employment with Trimble, in material breach of his contractual obligations. When FARO sent a letter to Lepere and Trimble demanding that Lepere comply with his contractual commitments to FARO or face a lawsuit, Lepere and Trimble ran into this Court with an anticipatory filing. Their complaint is nothing more than a haphazard attempt to avoid resolving FARO's affirmative claims in a Florida court pursuant to Florida law, as required by the Employment Agreement. Lepere's filing in this Court constitutes yet another material breach of his contractual obligations to

FARO. Under *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), the mandatory forum selection clause in the Employment Agreement requires the Court to transfer or dismiss this case, and Plaintiffs cannot meet the heavy burden to avoid its application.

Beyond that threshold dispositive issue, Plaintiffs' Complaint is legally deficient on multiple independent grounds and should be dismissed pursuant to Rule 12(b)(6). First, Plaintiffs' statutory claims under C.S. § 8-2-113, as amended in 2022, fail because the 2022 amendments do not apply retroactively to an employment agreement signed in October of 2021—more than nine months before the amendments took effect. Second, Trimble is not a signatory to the Employment Agreement and lacks standing to challenge that agreement (let alone to do so under statutory provisions that did not exist when the Agreement was signed). Third, Trimble's tortious interference claim fails because FARO's cease-and-desist letter does not constitute "wrongful conduct" for purposes of a tortious interference claim. Accordingly, the Court should transfer this action to the U.S. District Court for the Middle District of Florida or, in the alternative, dismiss Plaintiffs' Complaint, as set forth more fully below.[1]

## II. FACTUAL BACKGROUND

### A. The Parties and Lepere's Employment with FARO[2]

FARO is a leading provider of 3D scanning, imaging and measuring technology

---

1 As set forth below, the Court should transfer the suit in its entirety to its proper venue – i.e., the Middle District of Florida. As an alternative, the Court can transfer Lepere's claims to Florida and dismiss Trimble's claims under Rule 12(b)(6). Finally, the Court can dismiss the Plaintiffs' Complaint in its entirety under Rule 12(b)(6).

2 FARO submits evidence outside of the Complaint's four corners in support of its motion to transfer venue. For purposes of FARO's arguments in favor of dismissal under Rule 12(b)(6), however, FARO assumes the truth of Plaintiffs' factual allegations.

solutions, headquartered in Lake Mary, Florida. (*See* Exhibit 1, Decl. of Dietmar Wennemer ¶ 4, June 25, 2026 ("Wennemer Decl."); Exhibit 2, Decl. of Rod Chaffee ¶ 14, June 24, 2026 ("Chaffee Decl.").) Trimble is a global technology company and a direct competitor of FARO. (Ex. 1, Wennemer Decl. ¶ 6; Compl. ¶ 8.)

In October 2021, FARO hired Lepere as Senior Director, Product Marketing, and subsequently promoted him to Vice President, Core Marketing. (Exhibit 3, Decl. of Jessica Doherty ¶¶ 4, 7, June 24, 2026 ("Doherty Decl.").) Lepere was one of FARO's most senior and highly compensated leaders, earning more than $300,000 per year. (Ex. 3, Doherty Decl. ¶ 6.) He reported directly to the CEO, led product development and marketing efforts for the Company's 3D-imaging, LIDAR and other optical processing solutions, held worldwide pricing authority, and had unfettered access to the full suite of the Company's proprietary information. (Ex. 2, Chaffee Decl. ¶¶ 5-13; Ex. 1, Wennemer Decl. ¶¶ 11, 16-17.) Although he resided in Colorado, Lepere's employment relationship bore a close connection to Florida: he routinely traveled to the Company's Florida headquarters, interacted with colleagues there, and his executive assistant was located there. (Ex. 2, Chaffee Decl. ¶¶ 14-17.)

**B. Lepere's Employment Agreement with FARO**

As a condition of his employment, Lepere signed an Intellectual Property and Confidentiality Agreement and an accompanying Non-Competition and Non-Solicitation Addendum on October 28, 2021 (together, the "Employment Agreement"). (Compl. ¶¶ 15-16; *see also id.* Ex. A-B (ECF 5 at p. 17-26).) Before signing, Lepere advised FARO that he had an attorney review the Employment Agreement. (Ex. 3, Doherty Decl. ¶ 9.) Pursuant to the Employment Agreement, Lepere agreed to safeguard the Company's Confidential Information and Trade Secrets during his employment and for a

period of five years thereafter. (Compl. Ex. A, Employment Agreement § 3(a) (ECF 5 at p. 18).) Under the Agreement's non-competition provision, Lepere agreed that, for a period of 24 months after his disassociation from FARO, he would not "directly or indirectly, assist, be employed by, consult with, or provide services to any FARO Competitor . . . within the geographic boundaries of the continental United States." (Compl. Ex B., Non-Competition and Non-Solicitation Addendum § C (ECF 5 at p. 23).) The Employment Agreement expressly lists Trimble as a FARO Competitor. (*Id*. Sched. 1 (ECF 5 at p. 26).)

Critically, the Employment Agreement contains a mandatory forum selection clause specifying Florida as the exclusive forum to resolve all disputes relating to or arising out of the Agreement:

> Employee agrees that any action at law, suit in equity, or other judicial proceeding to enforce this Agreement, as well as any action at law, suit in equity, or other judicial proceeding relating to or arising out of this Agreement, shall be filed ***only*** in: (a) the United States District Court for the Middle District of Florida, Orlando Division; or (b) the Business Court of the Ninth Judicial Circuit Court of Orange County, Florida.

(Compl. Ex. A, Employment Agreement § 8 (ECF 5 at p. 20) (emphasis added).) In that provision, Lepere also "waive[d] the right to change venue," and he "agree[d] to exclusively submit to personal jurisdiction in the federal and state courts in or for Orange County, Florida and no other place." (*Id.*) The Employment Agreement provides that it shall be governed by Florida law. (*Id.* § 7.)

### C. Lepere's Resignation and Concealed Employment with Trimble

On September 9, 2025, Lepere abruptly announced his resignation from FARO. (Compl. ¶ 22.) He assured FARO executives that he planned to take time off, focus on personal matters, and that he did not intend to work for a competitor. (Ex. 1, Wennemer

Decl. ¶ 24.) His last day with the Company was September 30, 2025. (Id. ¶ 25.)

Those assurances were false. Lepere had been discussing a role with Trimble before he resigned, and he joined Trimble on or about October 25, 2025—less than 30 days after his last day at FARO—as Vice President, Strategic Initiatives, in Trimble's Geospatial division. (Compl. ¶ 25.) Lepere concealed his employment with Trimble from FARO for months; FARO did not learn of his new position until April 2026, when Lepere updated his LinkedIn profile. (Ex. 1, Wennemer Decl. ¶¶ 26-28.)

**D. FARO's Demand Letter and Lepere's and Trimble's Response**

On May 1, 2026, FARO sent a letter to Lepere and Trimble advising them of Lepere's contractual obligations and demanding assurances that they would immediately cease violating FARO's contractual and legal rights. (Compl. ¶ 28; *id.* Ex. C, F. Shrayber letter to J. Allison et al., May 1, 2026 ("FARO Letter") (ECF 5 at p. 28-40).) Among other things, FARO demanded that Lepere resign from his employment with Trimble or that Trimble terminate Lepere's employment and demanded an accounting of all Confidential Information or Trade Secrets that Lepere had used or disclosed for Trimble's benefit. (*See id.*; *accord* Compl. ¶¶ 29-32.) FARO's letter made clear that the Employment Agreement mandated a Florida venue and explained that FARO was prepared to file suit if Trimble and Lepere did not address its concerns. (Compl., Ex. C, FARO Letter (ECF 5 at p. 30-31).)

In response, Lepere and Trimble decided to preempt FARO and ran into this Court. On May 8, 2026, Lepere and Trimble served FARO with a complaint venued in

the District Court of Jefferson County, Colorado. (Ex. 1, Wennemer Decl. ¶ 32.)[3] Later that same day, Trimble's counsel sent a letter to FARO's counsel disputing FARO's allegations and claiming that the Employment Agreement's non-compete provisions were unenforceable under Colorado law.[4] (*Id.*) Trimble's letter attached a copy of the Complaint that they had previously served on FARO. (*Id.*)

Plaintiffs' Complaint asserts five claims for relief against FARO: (i) Declaratory Judgment under C.S. § 8-2-113(7); (ii) Declaratory Judgment under the Colorado Uniform Declaratory Judgments Law, C.S. § 13-51-101 et seq. (in the alternative); (iii) Violation of C.S. § 8-2-113(1.5)(a) for use of force, threats, or intimidation to prevent lawful occupation; (iv) Violation of C.S. § 8-2-113(8)(a) and (b) for attempting to enforce a void covenant; and (v) Tortious Interference with Contract. (Compl. ¶¶ 49-88.) Each claim relates to the Employment Agreement—the very agreement that requires all such disputes be resolved exclusively in the courts of Orange County, Florida. On May 29, 2026, FARO timely removed this action to this Court.

**E. FARO's Florida Action**

On May 28, 2026, FARO filed suit against Lepere in the U.S. District Court for the Middle District of Florida, asserting claims for breach of the Employment Agreement, trade secret misappropriation and breach of fiduciary duty. (*See* Exhibit 4, Compl., *FARO Technologies, Inc. v. Lepere*, No. 6:26-cv-01197 (M.D. Fla. May 28, 2026) (ECF 1).) FARO also filed a Motion for Preliminary Injunction and a motion for expedited

---

[3] The Complaint was subsequently filed on May 15, 2026, and docketed as Case No. 2026CV30859.

[4] Trimble's response revealed that Lepere had begun working for Trimble on October 25, 2025. (Ex. 1, Wennemer Decl. ¶ 33.)

discovery, both of which are currently pending. (*See* Exhibit 5, Mot. for Prelim. Inj., *FARO Technologies, Inc.*, No. 6:26-cv-01197 (M.D. Fla. June 4, 2026) (ECF 12, 24)[5].) On June 16, 2026, Lepere filed a motion in the Florida action to transfer venue to this Court, (*id.* ECF 27), and FARO has filed its opposition, (*id.* ECF 37.)

## III. LEGAL STANDARD

A forum selection clause may be enforced through a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). *Ray v. Mckinley*, No. 24-cv-01907-SKC-CYC, 2025 WL 1547021, at *2 (D. Colo. May 30, 2025), *rep. & recomm. adopted*, No. 1:24-CV-01907-SKC-CYC, 2025 WL 2304781 (D. Colo. Aug. 11, 2025); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013).

When a mandatory forum selection clause exists, "a proper application of 1404(a) requires that a forum selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59. The party defying the forum selection clause bears a heavy burden of establishing that the transfer to the forum for which the parties bargained is unwarranted. *Id.* at 62. When a forum selection clause is invoked in favor of transfer, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied." *Id.* at 62. When deciding a motion to dismiss or, in the alternative, to transfer due to improper venue under Section 1404, the Court may consider affidavits and other materials outside the pleadings. *See Carr v. Wells*, No. 20-CV-03319-PAB-SKC, 2022 WL 910953, at *8, n.5 (D. Colo. Mar. 28, 2022).

---

5 Due to a procedural omission, FARO refiled its motion on June 15, 2026. (*See id.* ECF 24.)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must frame a complaint with "enough factual matter (taken as true) to suggest that" he or she is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff," but it "need not accept as true a complaint's conclusory allegations, unwarranted inferences or legal conclusions." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025) (citations omitted).

## IV. LEGAL ARGUMENT

### A. The Court Should Transfer This Suit to the Middle District of Florida.

#### *1. The Forum Selection Clause in Lepere's Employment Agreement is Valid, Enforceable, Mandatory and Applicable.*

Plaintiffs' claims against FARO must be transferred to Florida pursuant to the valid, mandatory forum selection clause in Lepere's Employment Agreement. To invoke the doctrine of *forum non conveniens* pursuant to a mandatory forum-selection clause, FARO must first establish that the clause is "applicable, mandatory, valid, and enforceable." *Mckinley*, 2025 WL 1547021, at *2 (D. Colo. May 30, 2025) (citation omitted). FARO satisfies that burden here.

Forum selection clauses are presumably valid and enforceable unless the party seeking to avoid enforcement demonstrates that enforcement would be unfair or unreasonable under the circumstances. *See Dupray v. Oxford Ins. Co. TN LLC*, 645 F. Supp. 3d 1095, 1104 (D. Colo. 2022). A forum selection clause should only be invalidated if it is clearly unreasonable or unjust or if the party seeking to avoid enforcement shows that the clause is invalid for reasons such as fraud or overreaching.

*Id.* Here, the forum selection clause in Lepere's Employment Agreement states, in relevant part, as follows:

> Any action at law, suit in equity, or other judicial proceeding arising out of or related to this Agreement shall be instituted and maintained in the Courts in and for Orange County, Florida. Each party waives the right to change venue. Employee agrees to exclusively submit to personal jurisdiction in the federal and state courts in or for Orange County, Florida and no other place. Employee agrees that any action at law, suit in equity, or other judicial proceeding to enforce this Agreement, as well as any action at law, suit in equity, or other judicial proceeding relating to or arising out of this Agreement, shall be filed ***only*** in: (a) the United States District Court for the Middle District of Florida, Orlando Division; or (b) the Business Court of the Ninth Judicial Circuit Court of Orange County, Florida.

(Compl. Ex. A, Employment Agreement § 8 (ECF 5 at p. 20) (emphasis added).)

a. <u>The Forum Selection Clause is Valid and Enforceable.</u>

The Complaint makes no mention of the mandatory forum selection clause in Lepere's Employment Agreement; accordingly, Plaintiffs have failed to meet their burden of demonstrating that the clause should be invalidated or that it is otherwise unenforceable. *See, e.g.*, *Dupray*, 645 F. Supp. 3d at 1104 ("[G]iven that Plaintiffs have failed to cast doubt as to the validity of the forum-selection clause, this Court's analysis presupposes a contractually valid forum-selection clause." (internal marks omitted) (*citing Atl. Marine*, 571 U.S. at 62 n.5)).[6]

The Court should reject any argument by Plaintiffs that the forum selection clause is unenforceable under Colorado's public policy. As the *Dupray* court explained, the "strong public policy exception is a narrow one, and the Court will not disturb the presumptive validity of a mandatory forum selection clause absent a strong showing

---

6 Should Plaintiff argue in response to this motion that the forum selection clause is unenforceable, FARO respectfully reserves the right to respond to any such arguments in its reply.

that it should set the clause aside." *Id.* (internal marks omitted). Plaintiffs can make no such showing. As outlined in Section IV(B), *infra*, Plaintiffs cannot rely on C.S. § 8-2-113 to avoid application of the mandatory forum selection clause because the part of that statute that purports to invalidate forum selection and choice of law clauses as to Colorado residents was not in effect when Lepere signed the Employment Agreement.

Further and in any event, it would be improper for the Court to decline to enforce the forum selection clause even if Lepere's claims in this lawsuit are encompassed by the Colorado non-compete statute. *See Ray v. Mckinley*, 2025 WL 1547021, at *3. In *Mckinley*, the plaintiff argued that the court should decline to enforce a forum selection clause on the grounds that it would "contravene the strong public policy embodied in the Colorado Wage Claim Act." *Id.* The court disagreed, rejecting prior case law that interpreted the CWCA to void forum selection clauses choosing a venue outside of Colorado. *See Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996); *Mckinley*, 2025 WL 1547021, at *3. The *Mckinley* court found that *Morris* no longer stood because it came "long before *Atlantic Marine*, and to the extent *Morris* would make non-enforcement of forum selection clauses routine rather than exceptional…, that holding cannot be reconciled with *Atlantic Marine* and must yield to the decision of the Supreme Court." 2025 WL 1547021, at *3 (internal marks and citation omitted). Accordingly, the *Mckinley* court held that the presence of a claim under CWCA cannot, standing on its own, render a forum selection clause unenforceable. *Id.*

The same logic applies here, even if the Court were to consider the current version of C.S. § 8-2-113(6), despite its inapplicability. If the Court were to interpret this statute to void all forum selection clauses, the result would be to make non-enforcement

of forum selection clauses "routine" as to claims under the Colorado non-compete statute, rather than voiding forum selection clauses only under "exceptional" circumstances, as required by the Supreme Court. As the *Mckinley* court properly noted, that result cannot stand. Of course, the Court need not reach that issue here because C.S. § 8-2-113(6) does not apply to Lepere's claims in the first instance.

b. The Forum Selection Clause is Mandatory.

"To be mandatory, a forum selection clause must contain clear and unequivocal language demonstrating the parties' intent to establish an exclusive forum." *Mckinley*, 2025 WL 1547021, at *4 (*citing West v. Strike Tax Advisory, LLC*, No. 23-cv-00669-GPG-MEH, 2023 WL 3976431, at *2 (D. Colo. May 23, 2023)). The forum selection clause in the Employment Agreement clearly meets this standard because it unequivocally provides that any litigation between the parties relating to the Employment Agreement *shall* be filed *only* in the state or federal courts seated in Orange County, Florida. (Compl. Ex. A, Employment Agreement ¶ 8 (ECF 5 at p. 20).) "No more is necessary to make it mandatory." *Mckinley*, 2025 WL 1547021, at *4 (finding that forum selection clause that stated that lawsuits arising out of or related to the agreement "shall be instituted only in the state or federal court of proper jurisdiction in the State of Michigan" was a mandatory forum selection clause); *Dupray*, 645 F. Supp. 3d at 1104 (forum selection clause designating *only* courts located within the state of Tennessee is mandatory).

c. The Forum Selection Clause is Applicable to this Dispute.

There can be no reasonable dispute that the forum selection clause applies to the Plaintiffs' claims in this action. The forum selection clause applies to "any action at law, suit in equity, or other judicial proceeding arising out of or related to" the

Employment Agreement. (Compl. Ex. A, Employment Agreement ¶ 8 (ECF 5 at p. 20).) Here, Plaintiffs' claims center exclusively around the enforceability of the Employment Agreement's terms, and the forum selection clause is unquestionably "applicable" to those claims. *See Mckinley*, 2025 WL 1547021, at *4 (forum selection clause was applicable to plaintiff's CWCA claims where it encompassed all claims "relating to, or arising out of" plaintiff's independent contractor agreement); *Roberts v. Fain*, No. 25-cv-04094-NYW-KAS, 2026 WL 1694699, at *2 (June 11, 2026) (forum selection clause was applicable to personal injury claim arising from collision at a ski resort where applicable clause applied to all claims "arising from or related to any Activity" by plaintiff, where "Activity" expressly included skiing); *accord Florea v. Hash Map Labs, Inc.*, No. 8:25-cv-628-TPB-TGW, 2026 WL 274653, at *2 (M.D. Fla. Feb. 3, 2026) (forum selection clause was applicable to claims alleging misrepresentations in parties' agreement where the clause encompassed all claims "arising out of or relating to" that agreement).

### *2. The Balance of Public Interest Considerations Heavily Weigh in Favor of Transfer.*

Because the forum selection clause in the Employment Agreement is valid, enforceable, mandatory and applicable, the Court must conduct the balancing analysis outlined in *Atlantic Marine. See Mckinley*, 2025 WL 1547021, at *2. In *Atlantic Marine*, the Supreme Court explained that "the presence of a valid forum selection clause requires district courts to adjust their usual 1404(a) analysis in three ways." *Id.* First, the plaintiff's choice of forum merits no weight. *Id.* Second, the court should not consider any arguments about the parties' private interests. *Id.* at 64. The court may consider arguments about public-interest factors only; importantly, however, "those

factors will rarely defeat a transfer motion," and "the practical result is that forum-selection clauses should control except in unusual cases." *Id*. Finally, "the court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65-66.

Consistent with that analytical framework, the Court should assess only whether the public-interest factors in this matter "overwhelmingly disfavor a transfer." *Id.* at 67. Public-interest factors include: (1) the administrative difficulties of courts with congested dockets that can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Roberts*, 2026 WL 1694699, at *2. It is the Plaintiffs' burden as the parties defying the forum selection clause to demonstrate that these factors "overwhelmingly disfavor transfer." *Atl. Marine*, 571 U.S. at 67; *see also e.g.*, *Dupray*, 645 F. Supp. 3d at 1101; *Mckinley*, 2025 WL 1547021, at *3.

Plaintiffs cannot demonstrate that the public interest "overwhelmingly disfavors" a transfer of venue to Florida. As discussed above, Plaintiffs cannot rely on C.S. § 8-2-113 to avoid venue transfer because the statute is inapplicable, and because this Court has recently held that such a result would be irreconcilable with the Supreme Court's holding in *Atlantic Marine.* (*See* Section IV(A)(1)(a), *supra*); *see also Dupray*, 645 F. Supp. 3d at 1108 (argument for Colorado's "strong interest in protecting its residents from unauthorized insurers" insufficient to avoid venue transfer under *Atlantic Marine*). The remaining public interest considerations favor dismissal or transfer as well. First,

FARO is a Florida-based company, and Lepere's work for the Company was closely connected to – and conducted in – Florida. (*See* Ex. 2, Chaffee Decl. ¶¶ 16-17.) Accordingly, Florida has a strong localized interest in resolving this dispute. *See, e.g.*, *GFA Int'l, Inc. v. Trillas*, 327 So.3d 872, 878-79 (Fla. Dist. Ct. App. 2021) (discussing Florida's public interest in the enforcement of non-compete agreements). Further, the Employment Agreement designates Florida law as controlling, and a federal court based in Florida is better equipped to resolve the issues at play in this matter. (Compl. Ex. A, Employment Agreement ¶ 8 (ECF 5 at p. 20).) Finally, Plaintiffs can point to no evidence that this Court is better equipped or less busy than the U.S. District Court for the Middle District of Florida to administer this case, particularly in light of the "significant" increase in the civil caseload in the District of Colorado over the past year. *See Roberts*, 2026 WL 1694699, at *4 n.3. Colorado simply does not have a sufficient interest in a dispute involving a Florida-based corporation and an employee whose work was closely connected to Florida, and who expressly promised to resolve any of his disputes relating to this Employment Agreement in a Florida court. Accordingly, the Court must transfer this matter for further proceedings in the U.S. District Court for the Middle District of Florida. *Accord id.* at *5 (granting motion to dismiss for improper venue where none of the public interest factors outlined in *Atlantic Marine* "overwhelmingly disfavored" dismissal).

***3. The Forum Selection Clause Applies to Both Trimble and Lepere.***

The Employment Agreement's mandatory forum selection clause applies with equal force to Trimble, even though it is not a signatory to the Agreement. "Non-signatories to a contract are subject to its valid forum selection clause if they, or the claims they bring, are 'closely related to the contractual relationship.'" *PFC Payment*

*Sols., LLC v. Element Pmt. Servs., Inc.*, No. 12-CV-01472-CMA-MJW, 2012 WL 3264305, at *3 (D. Colo. Aug. 10, 2012) (citations omitted). Here, there is no dispute that Trimble's claims against FARO are "derivative of, and thus, closely related to," Lepere's Employment Agreement with FARO. *Id.* Trimble attacks the enforceability of the Employment Agreement. (Compl. Counts I-III, V.)[7] Further, it would be inefficient and create the unnecessary risk of inconsistent rulings to separate Lepere's claims from Trimble's and to allow only Trimble to proceed in this forum. Accordingly, the Court should apply the mandatory forum selection clause in Employment Agreement to both Lepere and Trimble and transfer or dismiss both Plaintiffs' claims for improper venue. *PFC Payment Sols*., 2012 WL 3264305 at *3-4 (applying forum selection clause to non-signatory plaintiff where non-signatory plaintiff's claims were derivative of signatory plaintiff's contractual relationship with defendant, and where allowing the claims of non-signatory defendants to proceed "would be inefficient and would run the risk of inconsistent rulings."); *Mckinley*, 2025 WL 1547021, at *3.

**B. In the Alternative, the Court Should Dismiss the Complaint Pursuant to Rule 12(b)(6).**

***1. C.S. § 8-2-113 Does Not Apply to Plaintiffs' Claims.***

Assuming, solely for argument's sake, that the Court were to elect not to transfer or dismiss the Complaint for improper venue, it should dismiss the Complaint for failure to state any cognizable claims. First, Counts I, III and IV of Plaintiffs' Complaint are based on a version of C.S. § 8-2-113 that was not yet enacted when Lepere signed the Employment Agreement, and that statute does not apply retroactively. This Court addressed this issue in *Edwards Lifesciences LLC v. Thompson*, No. 24-cv-02558-

7 For the reasons discussed below, Trimble's claims are deficient on their face.

RMR-KAS, 2026 WL 951017, at *14 (D. Colo. Feb. 27, 2026). In *Thompson*, the defendant brought a counterclaim pursuant to C.S. § 8-2-113(8), seeking actual statutory damages, reasonable costs and attorneys' fees arising from plaintiffs' alleged violation of the Colorado non-compete statute by "attempting to enforce a non-compete agreement that Colorado renders void." *Id.* The Court dismissed the counterclaim, holding that "[f]ederal courts in this district have consistently held that the 2022 amendments do not apply to employment agreements entered into before August 10, 2022." *Id.* at *15 (citing cases). The Court specifically pointed to language in the statute making clear that it applies to covenants not to compete "*entered into or renewed on or after its effective date"* of August 10, 2022. *Id.* (emphasis added).

Here, Lepere entered into the Employment Agreement on October 28, 2021. (Compl. ¶ 15.) Accordingly, the amended version of the statute does not apply to Lepere pursuant to its plain language – and in accordance with the court's holding in *Thompson*. As such, Plaintiffs' claims under Section 8-2-113(1.5) and (8) must be dismissed. *Id.* (dismissing claims under Section 8-2-113 where counterclaim plaintiff had signed the operative agreement on June 9, 2022 – one month before the amendments took effect); *see also* C.S. § 8-2-113 (effective Oct. 1, 2019 to Feb. 28, 2022) (attached hereto as Exhibit 6).

***2. Trimble Lacks Standing to Pursue Its Statutory Claims.***

Although it is not immediately clear from the face of the Complaint, it appears that Trimble brings claims against FARO for declaratory judgment and purported statutory violations arising under C.S. § 8-2-113. (Compl. Counts I-IV.) Trimble lacks standing to do so. The *current* version of the Colorado non-compete statute provides that "a worker who is subject to a covenant not to compete, *or a subsequent employer*

*that has hired or is considering hiring the worker*, may seek a declaratory judgment from a court of competent jurisdiction or an arbitrator that the covenant not to compete is unenforceable." C.S. § 8-2-113(7) (emphasis added). The version of the statute in effect when Lepere signed his Employment Agreement, on the other hand, does not contain this provision. (*See* Ex. 6.) Because the current version of the Colorado non-compete statute does not apply to an employment agreement that was executed before the amendments went into effect, Trimble cannot rely on that statutory provision to challenge the enforceability of the Employment Agreement.

Putting aside Trimble's erroneous reliance on C.S. § 8-2-113(7), Trimble has no standing to challenge the enforceability of a contractual agreement between Lepere and FARO – an agreement to which it is not a party. *See, e.g.*, *Nieusuma, Inc. v. Affygility Sols., LLC*, No. 1:18-cv-2515-RM-KLM, 2019 WL 1468402, at *1 n.1 (D. Colo. Apr. 3, 2019) (court lacked subject matter jurisdiction over claims related to a contract brought by a non-signatory); *Pierce v. Green Tree Servicing, LLC*, No 15-cv-00913-RBJ, 2015 WL 6689487, at *2-3 (D. Colo. Nov. 3, 2015), *aff'd* 667 F. App'x 294 (10th Cir. 2016) (non-signatory to loan contract lacked standing to sue for relief pursuant to that contract). Trimble is a stranger to that contractual relationship, and it can neither challenge nor enforce any of its provisions. Accordingly, the Court should dismiss Trimble's claims against FARO under Counts I-IV of the Complaint.

***3. Trimble Has Failed to State a Claim for Tortious Interference.***

To state a claim for tortious interference with a contract under Colorado law, Trimble must allege that FARO (1) was aware of a contract between Trimble and Lepere, (2) intended that one of the parties breach that contract, and (3) induce one party to breach or make it impossible for the party to perform the contract. FARO must

have also acted "improperly" in causing the result. *Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 871 (Colo. 2004). Here, Trimble's claim fails because it does not allege any facts permitting the inference that FARO acted "improperly," and because it has not alleged that any of FARO's actions "induced" Lepere to breach his employment agreement with Trimble or made it impossible for Lepere to perform under that contract.

Trimble's claim against FARO is premised on the allegation that FARO improperly interfered with Trimble's contractual relationship with Lepere *by sending a cease-and-desist letter threatening litigation*. (Compl. ¶¶ 81-88.) In order to sustain its claim, Trimble must establish that FARO's conduct was "improper." *Krystkowiak*, 90 P.3d at 871; *see also Tax Servs. of Am., Inc. v. Mitchell*, No. 07-CV-00249-REB-PAC, 2007 WL 4522472, at *1 (D. Colo. Dec. 18, 2007). Trimble has failed to allege facts permitting the inference that FARO's conduct was "improper," and the Complaint's allegations establish that the conduct at issue was subject to the litigation privilege.

*Mitchell* is instructive. In that case, the court explained that the institution of a lawsuit is "improper" so as to support a claim for tortious interference only if the actor has no belief in the merits of the suit or institutes it in bad faith. *Id.* at *2 (internal marks and citations omitted); *accord Begley v. Ireson*, 399 P.3d 777, 781 (Colo. App. 2017) ("An attorney's defamatory statements, made in the course of, or in preparation for, judicial proceedings in a filed case cannot be the basis of a claim for intentional interference with a contract or prospective contractual relations if the statements are related to the litigation.") The *Mitchell* court dismissed a counterclaim for tortious interference, finding that other than "bare-bones, conclusory allegations" that the counterclaim defendant had acted improperly, the counterclaim plaintiff had failed to

allege any facts to support the inference that the counterclaim defendant had initiated its lawsuit in bad faith.

The same logic applies to FARO's pre-suit demand letter. Statements made by an attorney preliminary to a proposed judicial proceeding, which are related to the proceeding, are privileged. *See Buckhannon v. U.S. West Communications, Inc.*, 928 P.2d 1331, 1334-35 (Colo. App. 1996); *see also Begley*, 399 P.3d at 781 (privilege protects pre-litigation statements related to judicial proceedings and made in good faith). Trimble premises its tortious interference claim on a pre-suit demand letter sent by FARO's counsel. Indeed, Plaintiffs preemptively filed a declaratory judgment suit against FARO in response to that letter. Accordingly, there can be no serious dispute that FARO's counsel's pre-litigation letter is protected by the litigation privilege and cannot form the basis for Trimble's tortious interference claim.

Moreover, Trimble does not allege any facts in the Complaint that would permit the conclusion that FARO sent the letter in bad faith or that it lacked belief in the merit of its allegations. Trimble does not even challenge the letter's merits under Florida law, which governs the parties' rights under the Employment Agreement, choosing instead to rely on an inapplicable version of the Colorado non-compete statute. The Court should dismiss Trimble's claim for tortious interference because Trimble has failed to plead that FARO acted "improperly." *See Mitchell*, 2007 WL 4522472, at *2; *Begley*, 399 P.3d at 781.

Trimble's tortious interference claim also fails because Trimble has failed to allege that FARO has "induced" Lepere to breach his contract with Trimble or otherwise made it "impossible" for Lepere to perform. At most, Trimble alleges only that as a

result of FARO's cease-and-desist letter, it has incurred attorneys' fees and costs in responding to FARO's allegations, as well as unspecified "disruption" to its business and "harm" to its relationship with Lepere. (Compl. ¶ 88.) The Complaint concedes that Trimble still employs Lepere and that Lepere continues to provide services to Trimble. (*Id.* ¶ 25.) Trimble's failure to plead that Lepere has breached his employment contract with Trimble or is otherwise unable to perform his obligations under that contract is fatal to its claim for tortious interference, and the Court should dismiss Count V of the Complaint. *Accord, e.g.*, *Nairn v. JP Morgan Chase & Co.*, No. 1:24-cv-00064, 2025 WL 4091216, at *6 (D. Colo. Feb. 12, 2025) (dismissing claim for tortious interference with a contract for real estate sale where plaintiff did not "include a number of details that would be material to the determination of whether [defendant's actions]… actually caused the real estate transaction to fall through or not."); *Shell v. Am. Fam. Rts. Ass'n*, No. CIV. A09CV00309MSKKMT, 2010 WL 1348548, at *17 (D. Colo. Mar. 31, 2010) (dismissing tortious interference claim where "the [c]omplaint does not allege that [defendant's] inducement actually resulted in any breach of contract or prevented the formation of any contract.").

## V. CONCLUSION

For all of the foregoing reasons, Defendant FARO Technologies, Inc. respectfully requests that the Court enter an order dismissing Plaintiffs' Complaint with prejudice or, in the alternative, transferring Plaintiffs' Complaint for further proceedings in the United States District Court for the Middle District of Florida.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: /s/ Fridrikh V. Shrayber
Fridrikh V. Shrayber
Alexis B. Thurston
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Telephone: (412) 297-4900 / Fax: (412) 209-1975
fred.shrayber@dentons.com
lexie.thurston@dentons.com

Dated: July 1, 2026
5594166

## CERTIFICATE OF CONFERRAL

I certify that on June 25, 2026, counsel for Defendant FARO Technologies, Inc. conferred with counsel for Plaintiffs Gregory Lepere and Trimble Inc. regarding the substance of FARO's Motion to Transfer or Dismiss Complaint. Plaintiffs oppose the relief requested herein.

*/s/ Fridrikh V. Shrayber*